<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

MICHAEL KOUNELIS,

              Plaintiff pro se,

     v.

LYDELL B. SHERRER, Administrator, VINCENT
SANDERS, Chief, JAMES, Sergeant, FORTE,
Sergeant, PEREZ, Sergeant, SCO ATUNCAR, SCO
SCHWENK, SCO BUSH, JOHN & JANE DOES 1-
10, jointly, severally and individually,

              Defendants.

CIVIL ACTION NO. 04-4714
(DRD)

**OPINION**

<u>Appearances</u>

Michael Kounelis
#223887/SBI &#0
Northern State Prison
A-1-E
168 Frontage Road
Newark, NJ 07114

      *Plaintiff pro se*

Peter C. Harvey, Esq.
ATTORNEY GENERAL OF NEW JERSEY
      by
Nicole M. Ahmed, Esq.
OFFICE OF THE NEW JERSEY ATTORNEY GENERAL
R.J. Hughes Justice Complex
25 Market St.
PO Box 112
Trenton, NJ 08625

      *Counsel for Defendants*

## *OPINION*

**DEBEVOISE, Senior District Judge**

Plaintiff Michael Kounelis commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Eighth,[1] and Fourteenth Amendment rights.  Kounelis alleges that during his incarceration in Northern State Prison in Newark, New Jersey, he was the victim of excessive force and false disciplinary reports.  Presently before the court is the motion of Defendants Lydell B. Sherrer, Vincent Sanders, Sergeant Frankie James, Sergeant Carlos Perez, SCO C. Atuncar, SCO W. Schwenk, SCO N. Bush, and Sergeant Forte[2] (collectively "Defendants") for summary judgment or, in the alternative, to dismiss.[3]  For the reasons set forth below, Defendants' motion to dismiss will be denied, and Defendants' motion for summary judgment will be granted with respect to Section 1983 claims against Sherrer and Sanders but denied in other respects.

## *FACTS*

This case arises out of an alleged assault on Plaintiff Michael Kounelis, an inmate at Northern State Prison and a citizen of Greece.  Kounelis alleges that on November 14, 2003 he was told he had a visitor (apparently the Consulate General of Greece) while at the prison

---

[1]Plaintiff's allegations of excessive force will be construed as Eighth Amendment claims, even though the Complaint does not label them as such, because the alleged excessive force occurred while Plaintiff was a prison inmate.

[2]Sergeant Forte has not been served with the Complaint and the Attorney General's office has not entered an appearance on his behalf.

[3]By order dated February 23, 2005, defendants Northern State Prison and the Department of Corrections were dismissed because they are not "persons" within the meaning of 42 U.S.C. § 1983 who may be subject to suit for alleged violations of Plaintiff's constitutional rights.

doctor's office.  As Kounelis went to get a pass for his visit, Schwenk, Atuncar, and an

unidentified officer were standing by the wall.  Kounelis alleges that Defendants Sgt. James, Sgt.

Forte, Sgt. Perez, Officer Atuncar, Officer Schwenk and Officer Bush assaulted him.  Kounelis

contends that the assault was retaliation for complaints Kounelis had filed against Officer

Atuncar on September 4, 2003 and September 11, 2003.  The area supervisor, James, opened the

door, and Atuncar grabbed Kounelis by the neck, punched him, threw him down, and kicked

him.  The other officers also began to kick Kounelis.

Defendants' version of events differs from Kounelis's version.  Defendants contend that

as Kounelis was proceeding through the frisk machine area of the Education Department at

Northern State Prison, Kounelis yelled obscenities at Officer Schwenk and bumped Schwenk's

chest area with his right shoulder.  Schwenk and Bush, who allegedly witnessed Kounelis's

aggression, restrained Kounelis to the ground.

A medical report dated November 14, 2003 states that Kounelis suffered a right index

finger laceration and left cheek bone injury.  A doctor's examination on November 19, 2003

reports that Kounelis had a low back sprain, abrasion on both knees, and injury to his left cheek.

A letter from the Consulate General addressed to Sherrer states that on November 14, 2003, he

saw that Kounelis "bore injuries on face and body" and requested a medical report of Kounelis's

condition.

Following the November 14, 2003 incident, Kounelis was issued a disciplinary infraction

for assault.  Kounelis pleaded not guilty.  A disciplinary hearing was held on December 5, 2003.

The hearing officer modified the charge against Kounelis from assault to unauthorized contact.

Kounelis was found guilty and was sanctioned with fifteen days' detention.  In finding Kounelis

guilty, the Hearing Officer summarized the evidence as follows:

> [Inmate] denies guilt, but SCO Bush observed [inmate] Kounelis
> bump into SCO Schwenk after going through the frisk machine in
> E/D area.  No reason for staff to misrepresent the facts – at
> confrontation SCO Bush did observe [inmate] Kounelis bump into
> SCO Schwenk.

(Pl.'s Opp'n Br. Ex. 26.)  The reason given for sanctioning Kounelis was that he "bumped into

staff – cannot tolerate or minimize confrontation held at N.S.P."  (Id.)  Kounelis contends that

neither the videotape of the incident nor pictures of his injuries were considered in the decision.

Kounelis appealed the decision using the Appeal of Disciplinary Decision form.  (Pl.'s

Opp'n Br. Ex. 27.)  Kounelis's appeal was denied and the decision of the hearing officer was

upheld on December 12, 2003.  (Pl.'s Opp'n Br. Ex. 28.)  The reason given for denying

Kounelis's appeal was that

> [t]here was compliance with the NJAC Title 10A on inmate disciplinary which
> prescribes procedural safeguards.  The decision of the Hearing Officer was based
> upon substantial evidence.  The sanction imposed was proportionate to the offense
> in view of the inmate's disciplinary history.  Extenuating circumstances did not
> outweigh substantial evidence or the inmate's disciplinary history and present
> custody status.

(Id.)

On December 15, 2003, Kounelis filed a claim for tort damages with the New Jersey

Bureau of Risk Management, arising out of the November 14, 2003 incident.  The New Jersey

Attorney General's Office determined that "there is no liability on the part of the State of New

Jersey" and therefore that it would not "make any voluntary payments concerning this matter."

On December 17, 2003, Kounelis filed an Administrative Remedy Form against Officer

Atuncar for harassment.  (Pl.'s Opp'n Br. Ex. 37.)  Kounelis therein claimed that on December

15, 2003, Atuncar told him that if Kounelis filed a civil action "for the whip [Kounelis] was given on November 14, 2003, we are going to teach your [sic] something again."  (Pl.'s Opp'n Br. Ex. 38.)  Kounelis also requested housing in a cell farther way from Atuncar.  (Pl.'s Opp'n Br. Ex. 39.)  The Department of Corrections responded to the Administrative Remedy Form by checking a box on the "Staff Corrective Action Form," stating "You cannot use the Administrative Remedy . . . form[] relating to DOC disciplinary charges/appeals."

On December 23, 2003, Kounelis filed another Administrative Remedy Form.  (Pl.'s Opp'n. Br. Ex. 42.)  Therein he claimed he had spoken to Defendant James, who allegedly stated that he had witnessed the assault on November 14, 2003, and did not try to stop the assault.  (Id. at 42-43.)  Kounelis claimed that James failed to instruct, supervise, control and discipline the officers involved in the assault.  (Id. at 43.)  He said that the November 14th incident was the "unlawfully and maliciously assaulting [of] a prisoner Greek citizen on the hands of the staff." (Id.)  This Administrative Remedy Form was met by the same response by the Department of Corrections: that Kounelis could not use the Administrative Remedy Form for matters "relating to DOC disciplinary charges/appeals."  (Pl.'s Opp'n Br. Ex. 36.)  Northern State Prison staff advised Kounelis that Administrative Remedy Forms are not to be used for disciplinary matters.

On September 27, 2004, Kounelis commenced this action by filing the Complaint. Kounelis also continued to file Administrative Remedy Forms.  On November 18, 2004, Kounelis complained that he was "enormously concerned that I have been given different treatment [sic] from other inmates," and requested an interview.  On April 11, 2005, Kounelis complained that his November request went unanswered, and wrote that he had been "assault[ed] by your chain of command, and your staff," and had been subject to different treatment from

other inmates "since November 14, 2003." (Pl.'s Opp'n Br. Ex. 80-81.)  The Department of

Corrections determined that Kounelis's April 11, 2005 complaint was actually a "routine inmate

request," rather than an "administrative remedy" request because it contained "false allegations."

(Id. at 80.)  The staff response area contained the following statement:

> Your erroneous request has no merit.  You submitted three (3)
> concerns in November and they all received timely responses.  In
> the month of March you submitted two (2) concerns and they have
> been responded to.  Please refrain from making false allegations.

(Id.)

Kounelis's Complaint in the present action contains six counts.  Count I appears to be a

claim for assault and filing false reports against Defendants James, Forte, Perez, Atuncar,

Schwenk, and Bush.  (See Compl. at 3-4.)  In Count II, pursuant to 42 U.S.C. § 1983, Kounelis

alleges that Defendants Sherrer, Sanders, James, Forte, Perez, and Bush violated his Fourth,

Fifth, and Fourteenth Amendment rights.  (Compl. 4-5.)  Count III claims intentional infliction of

emotional distress and denial of due process against all Defendants.  (Compl. 5-6.)  The

intentional infliction of emotional distress is attributed to the "actions of the defendants."  The

basis for the due process claim is that "prison officials filed false reports," and that at the hearing,

Defendant Sherrer "denied plaintiff videotape evidence, a polygraph test in the credibility issue,

and administrative remedies filed against officer Atuncar that stated he was going to retaliate

against the plaintiff" before the assault.  (Compl. at 6.)  Count IV demands judgment against all

Defendants and appears to claim that Defendants James, Atuncar, Schwenk and Bush "were

otherwise careless and negligent" in using excessive force and filing false reports against

Plaintiff.  Count V seems to be another 42 U.S.C. § 1983 claim, this one against Sherrer,

Sanders, the Department of Corrections, and Northern State Prison for failure to supervise the

other Defendants.  However, on February 23, 2005, Northern State Prison and the Department of

Corrections were dismissed from the case because they are not "persons" subject to 42 U.S.C. §

1983.  (Def.'s Br. at 5.)  Count VI is against John Doe defendants.

## STANDARDS OF REVIEW

### A.  Motion to dismiss

A motion to dismiss should not be granted unless "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980);

Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 634 (3d Cir. 1989).  Allegations contained in

the Complaint will be accepted as true, Cruz v. Beto, 405 U.S. 319, 322 (1972), and Plaintiff

shall be "given the benefit of every favorable inference that can be drawn from those allegations."

Schrob v. Catterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  At a minimum, the Complaint must

give Defendants fair notice of what Plaintiff's claims are and the grounds upon which they rest.

Conley, 355 U.S. at 47.  In order to satisfy even the liberal notice-pleading requirements of Rule

8(a)(2), in multiple defendant actions, the complaint must "clearly specify the claims with which

each individual defendant is charged."  5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE & PROCEDURE, § 1248 at 313-314 (2d ed. 1990).

### B.  Motion for summary judgment

Summary judgment will be granted if the record establishes that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  FED. R. CIV. P. 56(c).  Rule 56(c) imposes a burden on the moving party simply to point

out to the district court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met this burden, the burden then shifts to the non-moving party.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Moreover, she may not simply "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."  Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  Rather, she must "set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Id. at 247.  In determining whether there exists a material issue of disputed fact, however, the facts and the inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party.  Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

## *DISCUSSION*

Defendants argue that the Complaint should be dismissed against Defendants Atuncar, Perez or James for failure to state a claim.  Alternatively, Defendants have advanced three arguments in favor of summary judgment.  First, Defendants contend that they should be granted summary judgment because Plaintiff failed to exhaust his administrative remedies as required by

the Prison Litigation Reform Act.  Second, Defendants Sherrer and Sanders argue that they are entitled to summary judgment because a Section 1983 claim cannot be premised upon a theory of vicarious liability.  Third, Defendants argue that they should be granted summary judgment because they are entitled to qualified immunity.  The motion to dismiss for failure to state a claim will be denied, and the motion for summary judgment will be granted with respect to Section 1983 claims against Sherrer and Sanders but denied with respect to Defendants' other arguments.

## A.  Rule 12(b)(6) motion

Defendants contend that Kounelis has failed to state a claim against Atuncar, Perez, or James because they had no personal involvement in the November 14, 2003 incident.  According to Defendants, Atuncar did not assault Kounelis and was not involved in the subsequent code which was called after the November 2003 incident; Perez merely delivered the Disposition of Disciplinary Appeal form to Kounelis on December 16, 2003 but was not involved in the November 2003 incident or any subsequent investigation; and James had no personal involvement in the November 2003 incident.

The Complaint states a claim against Atuncar, Perez, and James.  The Complaint alleges that various Defendants, including Atuncar, Perez, and James, assaulted Kounelis on November 14, 2003 in Northern State Prison "by repeatedly striking and/or kicking the plaintiff about the feet, face, and body, while plaintiff was in custody, unarmed, and unable to resist defendants" (Compl. ¶ 10), that this assault violated Kounelis's constitutional rights and inflicted physical injuries as well as emotional distress.  Allegations of excessive force in violation of the Eighth Amendment can be inferred from the Complaint.

"The unnecessary and wanton infliction of pain . . . constitutes cruel and unusual

punishment forbidden by the Eighth Amendment.'"  Whitley v. Albers, 475 U.S. 312, 319 (1986)

(internal quotation marks omitted).  One example of unnecessary and wanton infliction of pain is

pain inflicted without penological justification.  Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

In the context of prison conditions, the court must ascertain whether prison officials acted with

deliberate indifference to the inmate's health or safety.  Hope v. Pelzer, 536 U.S. 730, 737-738

(2002).

An Eighth Amendment inquiry has two components, the first subjective and the second

objective: (1) the defendant's motive for his conduct, and (2) the harm inflicted.  Hudson v.

McMillan, 503 U.S. 1, 7-8 (1992).  The subjective component requires a showing that the

defendant was wanton in light of the particular circumstances surrounding his conduct.  Wilson

v. Seiter, 501 U.S. 294, 299 (1991).  "[T]he core judicial inquiry is . . . whether force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm."  Hudson, 503 U.S. at 7.  With respect to the objective component, "[w]hen prison

officials maliciously and sadistically use force to cause harm, contemporary standards of decency

always are violated."  Id. at 9.  The injury inflicted need not be significant or extreme in order to

find that excessive force was used in violation of the Eighth Amendment, but there is no Eighth

Amendment violation for "*de minimis* uses of physical force, provided that the use of force is not

of a sort repugnant to the conscience of mankind."  Id. at 9-10 (internal quotation marks omitted).

The Complaint has adequately alleged an Eighth Amendment violation to survive a Rule

12(b)(6) motion.  First, the Complaint alleges that Defendants tried "to gloss over and cover up

the gross misconduct, unpofessionalism [*sic*] and indifference demonstrated by the named

defendants."  (Compl. ¶ 10.)  This allegation favors an inference that Defendants acted

maliciously and sadistically to cause harm to Kounelis rather than in a good faith effort to maintain or restore discipline.  Moreover, even if Atuncar, Perez, and James did not participate in the actual physical altercation, they may still be liable on other grounds such as failure to intervene in the altercation.  A prison official's "failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so."  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  Therefore, the first component of an Eighth Amendment claim is stated in the Complaint.  The second component – *i.e.*, injury from the challenged conduct – appears to be stated as well.  The Complaint alleges that as a result of the alleged assault, "Plaintiff has sustained severe and permanent personal injuries, was caused to endure pain and suffering, was unable to attend to his normal duties and pursuits and was injured in other ways."  (Id. ¶ 11.) Taking the Complaint's allegations as true, and drawing all reasonable inferences therefrom in favor of Kounelis, the Complaint states a claim of excessive force against Defendants.  The Complaint gives Atuncar, Perez, and James fair notice of what Plaintiff's claims are and the grounds upon which they rest.  It may be true, as Defendants contend, that Atuncar, Perez, and James had no personal involvement in the November 14, 2003 altercation and should not be held liable, but this is irrelevant when examining the sufficiency of the Complaint itself.  Accordingly, Defendants' 12(b)(6) motion will be denied.

**B.  Prison Litigation Reform Act**

Defendants argue that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act and should therefore be barred from bringing this action. Defendants' arguments are unpersuasive for the following reasons.

11

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, requires a prison inmate to exhaust administrative remedies before bringing a § 1983 claim with respect to prison conditions.  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to prisoners alleging use of excessive force by corrections officers.  Porter v. Nussle, 534 U.S. 516, 520 (2002).  "Administrative remedies" that must be exhausted include prison grievance procedures not formally adopted by a state administrative agency.  Concepcion v. Morton, 306 F.3d 1347, 1348-1349 (3d Cir. 2002).  Moreover, in order to comply with 42 U.S.C. § 1997e(a), the prisoner must "properly (i.e., on pain of procedural default) exhaust administrative remedies as a prerequisite to a suit in federal court."  Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004).  The determination of whether a prisoner has properly exhausted his administrative remedies is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials.  Id.  "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial."  Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir. 2000) (citation omitted).  Failure to exhaust administrative remedies is an affirmative defense.  Spruill, 372 F.3d at 223 n.2, and Defendants have the burden of pleading and proving the defense in a motion for summary judgment or at trial.

Here, Defendants argue that Kounelis failed to exhaust his administrative remedies at the prison regarding the alleged assault on November 14, 2003 and that, as a result, Defendants were deprived of an opportunity to review Kounelis's allegations before court intervention.  According to Defendants, the New Jersey Department of Corrections procedure for filing an administrative grievance requires an inmate to file an Administrative Remedy Form, which is given to an appropriate supervisor for a response.  The Administrative Remedy/Grievance Policy Statement

12

provides the following information:

> The *ADMINISTRATIVE REMEDY FORM* is the final step of the Request/Remedy process, and is designed to permit inmates to identify possible problem areas and to allow the Institutional Administration to effect timely and appropriate responses to these problems. . . . Inmates are expected to use this final area of the Grievance Process prior to applying to the courts for relief.

(Brooks Aff. Ex. A.)  When the inmate receives a response, his remedies are considered to have been exhausted.

Defendants acknowledge that Kounelis filed an Administrative Remedy Form on December 23, 2003 concerning the November 14, 2003 incident.  However, they contend that since it was determined that Kounelis's grievances did not meet the definitions of issues to be included on an Administrative Remedy Form, Kounelis did not exhaust his administrative remedies.  Specifically, Defendants argue that "Staff advised Kounelis that Administrative Remedy Forms are not to be utilized for matters concerning disciplinary matters."  Defendants do not explain why an Administrative Remedy Form should not be utilized.

Defendants' argument fails because Kounelis properly exhausted his administrative remedies for at least three reasons.  First, the Department of Corrections issued a Staff Response Form in response to Kounelis's Administrative Remedy Form.  Importantly, the Staff Response Form which informed Kounelis that an Administrative Remedy Form should not be utilized for disciplinary matters or appeals further stated that "[t]his matter should be addressed through the appeals process in the courts."  (Brooks Aff. Ex. C.)  By filing the Complaint in this action, Kounelis appears to be following the procedure as instructed by the Department of Corrections on the Staff Response Form.

Second, Kounelis effectively exhausted his "available" administrative remedies through

13

the disciplinary hearing and subsequent appeal.  The Court of Appeals has ruled that a prisoner

has satisfied the exhaustion requirement when the prisoner's allegations have been fully

examined on the merits by the ultimate administrative authority and have been found wanting.

Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  In Camp, the prisoner attempted to file an

excessive force grievance, which was not processed because he was on a grievance restriction.

The prisoner then submitted a grievance which was forwarded to the Office of the Secretary of

Corrections, which was the appropriate office for review.  The Office of the Secretary of

Corrections wrote a letter to the prisoner advising him that his "allegations were investigated

thoroughly and a determination was made that his complaint lacked credibility and that the

officers' actions were justified."  Id. at 280.  The Court of Appeals in Camp rejected the

defendants' argument that the prisoner did not exhaust his administrative remedies.  The Court of

Appeals found that the prisoner was entitled to judicial consideration because he exhausted

available administrative remedies and had received an adverse decision on the merits from the

ultimate administrative authority.  Id. at 281 (noting that the prisoner did not have to "jump

through any further administrative hoops to get the same answer" ).

      In this case, Kounelis was charged with Improper Contact With A Person.  Kounelis was

accused of instigating the altercation on November 14, 2003 and defended himself by arguing

that he was the victim of assault, not the perpetrator.  Kounelis's version of the facts of the

November 14, 2003 incident in the disciplinary action was substantially the same as it is in the

Complaint.  The hearing officer considered these arguments when it ruled against Kounelis and

found Kounelis guilty of Improper Contact with a Person.  The hearing officer's ruling was

affirmed on appeal, which found that the officers had acted in accordance with procedure.  Thus,

all of the fact-finding necessary for a charge of excessive force was already done in the

disciplinary proceeding and appeal, which were decisions on the merits regarding the November

14, 2003 incident.  Having effectively exhausted his available administrative remedies, Kounelis

could thereafter receive judicial consideration.  Id. at 281.

Third, the purposes of the exhaustion requirement of 42 U.S.C. § 1997e(a) have been

served by the process Kounelis pursued.  The purposes are:

> (1) to return control of the inmate grievance process to prison
> administrators; (2) to encourage development of an administrative
> record, and perhaps settlements, within the inmate grievance
> process; and (3) to reduce the burden on the federal courts by
> erecting barriers to frivolous prisoner lawsuits.

Spruill, 372 F.3d at 230.  In this case, the Department of Corrections had control throughout the

grievance process.  Not only did prison administrators oversee the disciplinary proceedings, but

they also informed Kounelis that filing an Administrative Remedy Form was not the proper

avenue and that his allegations "should be addressed through the appeals process in the courts."

During the course of the disciplinary proceedings as well as afterwards, an administrative record

was developed pertaining to the November 14, 2003 incident.  To any extent that administrative

procedures keep frivolous claims from court, the findings of the hearing officer and appeals

board served the same purpose as would a response indicating the same on an Administrative

Remedy Form.

Still, it might be argued that Kounelis should have filed an Administrative Remedy Form

regarding the November 14, 2003 incident before filing this action.  However, when Kounelis

filed two Administrative Remedy Forms relating to the incident, including ones that made

specific allegations against James and Atuncar, both forms were met with the same response

from Defendants – *i.e.*, Kounelis could not use Administrative Remedy Forms for disciplinary matters.  Now the Defendants purport to require Kounelis to do something which they specifically told him was improper to do in order to proceed before this court. Other courts have held that when a prisoner is informed that they cannot file a grievance on a certain issue, they effectively have no administrative remedies available on that issue to exhaust.  See Pearson v. Vaughn, 102 F. Supp. 2d 282, 288 (E.D. Pa. 2000) (holding that where response to inmate's grievance was that grievance was "not addressable under the grievance process," inmate's lawsuit was not barred by exhaustion requirement);  Freeman v. Snyder, No. Civ.A. 98-636-GMS, 2001 WL 515258 (D. Del. April 10, 2001) (finding that when inmate was told he could not file a grievance about where he was housed, there was no administrative remedy "available" on that issue).

Therefore, Defendants' motion for summary judgment will be denied because Kounelis properly exhausted his administrative remedies.

**C.  Section 1983 claims against Sherrer & Sanders**

Defendants argue that summary judgment must be granted with respect to Sherrer and Sanders because the Complaint does not allege direct personal conduct to state a claim under § 1983.  "[A] civil rights complaint must portray specific conduct by state officials which violates some constitutional right of the complainant in order to state a claim for relief."  Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).  Liability in a § 1983 action cannot be premised on the theory of vicarious liability alone.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.   Allegations of participation or actual knowledge and

16

acquiescence, however, must be made with appropriate particularity." Id.

The Complaint alleges that Sherrer and Sanders failed to instruct, supervise, control and discipline on a continuing basis, and that under color of law they approved or ratified the conduct of the other Defendants.  Plaintiff's opposition brief states that "Defendants Sherrer and Sanders, because of consistent occurrences of subordinate assaults on corrections clients under their care and direction, know or reasonably should know that a pervasive risk of harm exists in the environment charged to their care."  (Opp'n Br. at 12-13.)  Neither the Complaint nor Plaintiff's opposition papers, however, provide any specific allegations or evidence that would support these claims or raise a genuine issue of material fact.  Kounelis has not alleged or shown that Sherrer and Sanders actually participated in, knew about or acquiesced to the use of force on November 14, 2003.  Therefore, summary judgment will be granted in favor of Sherrer and Sanders.

**D.  Qualified immunity**

Defendants argue that they are entitled to qualified immunity because there was no constitutional violation and Defendants acted reasonably.  More specifically, Sherrer and Sanders contend that they had no reason to believe that Plaintiff would assault Schwenk and be restrained as a result.[4]  James and Perez argue that they did not violate Kounelis's due process rights and acted reasonably by providing Kounelis with a disciplinary hearing that comported with due process.  Schwenk and Bush argue that they used reasonable force to subdue Plaintiff when Plaintiff allegedly assaulted Schwenk.

---

[4]Because summary judgment will be granted to Defendants Sherrer and Sanders as discussed *supra* in section C, the court need not reach the issue of whether Sherrer and Sanders are entitled to qualified immunity.

The threshold inquiry is whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right.  Hope v. Pelzer, 536 U.S. 730, 736 (2002).  If a constitutional right would have been violated were the allegations established, the next inquiry is whether the constitutional right was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202.  If the constitutional right was clearly established, the officer is not entitled to qualified immunity.  "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."  Id. at 205.  The theory of qualified immunity acknowledges that "reasonable mistakes can be made as to the legal constraints on particular police conduct."  Id. at 205.

### (1) Defendants James and Perez

Defendants James and Perez contend that they are entitled to qualified immunity because they did not violate Kounelis's constitutional due process rights and acted reasonably.  James and Perez argue that the disciplinary hearing comported with due process as articulated in Avant v. Clifford, 67 N.J. 496 (N.J. 1975), which required that a prisoner be afforded certain rights before he could be subjected to disciplinary sanctions.  In this case, Defendants argue that Kounelis was given written notice of the charges 24 hours prior to the disciplinary hearing, which was conducted by an impartial tribunal, and was allowed to cross-examine adverse witnesses.  Additionally, Kounelis and his counsel substitute were also allowed to make statements on Kounelis's behalf and were shown the adjudication report.  These observances of due process and the submission of substantial evidence, Defendants argue, show that the disciplinary hearing

18

comported with due process and that James and Perez are entitled to qualified immunity.

One critical right which Defendants list in their Brief but do not apply to the facts of this case is the right of the prison inmate to present documentary evidence in defense of disciplinary charges.  See id. at 529 (noting that "inmates are allowed to call witnesses and present documentary evidence in their defense when such procedure will not be unduly hazardous to institutional safety or correctional goals.")  In this case, Kounelis contends that a surveillance camera captured the November 14, 2003 incident on videotape, which should be produced by Defendants as evidence that excessive force was used.  Defendants refused to produce the videotape to Kounelis for the disciplinary hearing, and they continue to withhold the videotape in this action.

In this case, withholding the videotape of the November 14, 2003 incident at the disciplinary hearing violated Kounelis's due process rights to present documentary evidence and "marshal the facts in his defense."  Young v. Kann, 926 F.2d 1396, 1402 (3d Cir. 1991).  In Young, the Court of Appeals held that a prison official's refusal to order the production of a letter written by the prisoner in which the prisoner allegedly threatened his cellmate deprived the prisoner of his due process rights.  Id.  In this case, the videotape was a crucial piece of evidence in the disciplinary hearing and is crucial to this action as well.  Inasmuch as the videotape recorded the November 14, 2003 altercation, it is the only "objective" witness to the altercation.  Furthermore, the Court of Appeals also warned against "hearing officers relying exclusively upon a prison employee's oral summary of information implicating the prisoner."  Id.  It appears that the hearing officer in Kounelis's disciplinary hearing relied solely on officers' testimony.  In the summary of the evidence section of the Adjudication of Disciplinary Charge form, the hearing

officer noted that there was "no reason for staff to misrepresent the facts."  (Pl.'s Opp'n Br. Ex. 26.)  Such "blind acceptance of the prison officer's statement" is "unacceptable."  Young, 926 F.2d at 1402.

Defendants argue that surveillance videos are considered confidential information under N.J.A.C. § 10A:71-2.1(a)(2) and, if disclosed, could have an adverse impact on the security or orderly operation of an institution because the utility of surveillance videos would be compromised if inmates knew the location of the cameras.  Defendants contend that "the description of the video and its contents as disclosed in an officer's report, and a hearing officer's viewing of the video, must suffice in order to ensure the safety of the institution."  (Reply Br. at 16.)

Defendants' argument that the hearing officer's viewing of the videotape was sufficient does not pass constitutional muster.  See Muhammad v. Butler, 655 F. Supp. 1470 (D.N.J. 1987) (finding due process violation where prisoner was denied transcript or actual copy of recording of telephone call that allegedly recorded his infraction).  Defendants' proffered reasons for withholding the videotape are unpersuasive.  First, the provision cited – N.J.A.C. § 10A:71-2.1(a)(2) – is inapposite as to whether the videotape should be produced because the provision applies only to records kept by the parole board "pertaining to parole and parole supervision."  Second, Defendants have failed to show that allowing Kounelis to use the videotape as evidence would be unduly hazardous to institutional safety or correctional goals.  Defendants do not submit any evidence to support their contention that the utility of surveillance videos would be compromised if inmates knew the location of the cameras.  For example, the court does not know whether the location of the camera which allegedly captured the November 14, 2003 incident is

concealed from inmates' view.  If the camera and videotape exist as Kounelis alleges, but was

concealed as Defendants imply, then how did Kounelis know that the incident had been

videotaped?  Even assuming that the camera is concealed, the production of the videotape would

at most reveal one camera's location, which is generally located in the frisk machine area.  In

such an area where inmates are routinely frisked and searched, inmates know that they are under

heightened scrutiny regardless of the presence or specific location of any cameras in the frisk

area.  Therefore, allowing Kounelis to use the videotape as evidence in the disciplinary hearing or

in this action would not be unduly hazardous to institutional safety or correctional goals.

Having found that, the facts as alleged, taken in the light most favorable to Kounelis,

show that a constitutional right was violated, the next inquiry is whether the constitutional right

was clearly established.  Saucier, 533 U.S. at 201.  In this case, the constitutional due process

rights of prison inmates have been clearly established by Wolff v. McDonnell, 418 U.S. 539

(1974), and its progeny.  Young, 926 F.2d at 1399 n.7.

Defendants James and Perez therefore are not entitled to qualified immunity in

connection with the disciplinary hearing.

### (2) Defendants Schwenk and Bush

Defendants Schwenk and Bush argue that they are entitled to qualified immunity because

they did not use excessive force.  The first prong of the qualified immunity inquiry has been met.

Taking the facts alleged by Kounelis in the light most favorable to him, the prison officials who

participated in the alleged assault violated Kounelis's Eighth Amendment right not to be subject

to excessive force.  As discussed *supra* in section A, it reasonably can be inferred from the

Complaint's allegations that the prison officials assaulted Kounelis, not to maintain or restore

discipline, but maliciously and sadistically to cause harm.   The second prong of the qualified

immunity inquiry has also been met.  As of November 14, 2003, the standard for determining

whether excessive force was used in violation of the Eighth Amendment had been clearly

established.  The standard is "whether force was applied in a good faith effort to maintain or

restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson,

503 U.S. at 6.  The application of this standard must be made within the specific context of each

case, not as a broad general proposition.  Saucier, 533 U.S. at 201.  The "pivotal inquiry" is

therefore whether a reasonable prison official would have understood on November 14, 2003 that

physically beating a prison inmate without justification violated the Eighth Amendment.  The

answer is in the affirmative.  E.g., Hudson, 503 U.S. 1.

Accordingly, Defendants Schwenk and Bush are not entitled to qualified immunity with

respect to Kounelis's excessive force claims.

## *CONCLUSION*

For the reasons set forth above, Defendants' motion to dismiss for failure to state a claim

will be denied, and Defendants' motion for summary judgment will be granted with respect to

Section 1983 claims against Sherrer and Sanders but denied with respect to Defendants' other

arguments.  An appropriate order will be issued.


/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.


September 5, 2005