**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
MICHAEL KOUNELIS,                   :        Civil Action No. 04-4714(DRD)
                                    :
              Plaintiff,            :
                                    :
v.                                  :
                                    :
LYNDELL B. SHERRER, et al.,         :            **OPINION**
                                    :        October 20, 2005
                                    :
              Defendants.           :
_____:

**SUSAN D. WIGENTON, UNITED STATES MAGISTRATE JUDGE:**

This matter comes before the Court on Plaintiff Michael Kounelis' ("Plaintiff") motion to

amend his Complaint filed on September 27, 2004 (the "Motion"). Plaintiff, a prisoner, commenced

this action pursuant to 42 U.S.C. § 1983 alleging that various prison officers violated his Fourth,

Fifth, Eighth, and Fourteenth Amendment rights. Plaintiff now seeks to incorporate new claims

against previously unnamed defendants Captain Sagebiel ("Sagebiel") and Lieutenant Cannon

("Cannon"). Both are officers of Northern State Prison where Plaintiff is incarcerated. Specifically,

Plaintiff alleges that Sagebiel and Cannon violated the New Jersey Conscientious Employee

Protection Act *N.J.S.A.* 34:19-1("CEPA") and violated his First Amendment right by taking

retaliatory actions against him for initiating this action.[1] The Court decides the Motion upon the

parties' written submissions pursuant to *Fed. R. Civ. P.* 78. For the reasons set forth below, the

_____

[1]Although Plaintiff in his Proposed Amended Complaint did not assert any First Amendment claims against
Sagebiel and Cannon, the pleadings can be read to allege retaliation claims against them.

Motion is GRANTED in part and DENIED in part.   The Motion is granted with respect to asserting First Amendment claims against Sagebiel and Cannon in the Amended Complaint.  The Motion is denied with respect to asserting CEPA claims against Sagebiel and Cannon.

## Background Facts

This case arises out of an alleged assault on Plaintiff, an inmate at Northern State Prison ("NSP").  In Plaintiff's original Complaint,[2] he alleged that on November 14, 2003, Defendants Sgt. James, Sgt. Forte, Sgt. Perez, Officer Atuncar, Officer Schwenk and Officer Bush (collectively "Defendants") assaulted him.  Plaintiff contended that the assault was retaliation for complaints he had filed against Officer Atuncar on September 4, 2003 and September 11, 2003.  Specifically, Plaintiff complained that Officer Atuncar denied him access to the law library in NSP, and that he was subjected to verbal harassment by the NSP staff.[3]  Subsequently, Plaintiff initiated this action alleging that Defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment Constitutional rights.[4]

Plaintiff now alleges in his Proposed Amended Complaint that after the commencement of

---

[2]The Court will only recount relevant facts pertinent to the Motion.  The Parties, in their submissions, have sufficiently recounted the facts of the case.

[3]Plaintiff in his Proposed Amended Complaint provided additional factual background for the claims against Defendants in his original Complaint.  Specifically, Plaintiff includes: (1) denial of access to the NSP law library on September 4, 2003;  (2) verbal harassment by NSP staff on September 11, 2003; and (3) the imposition of false disciplinary charges on November 15, 2003.  Defendants incorrectly assert that these are additional claims against them.  In Plaintiff's original Complaint, Plaintiff already provided, although not in detail, the incidents that occurred on September 4, 2003, September 11, 2003 and the alleged imposition of false disciplinary charges on November 15, 2003.  As such, the Court will allow the *Pro Se* Plaintiff to clarify his original Complaint with these additional facts.

[4]Defendants filed a motion for summary judgment and a motion to dismiss Plaintiff's original Complaint.  District Judge Dickinson R. Debevoise ruled on September 6, 2005 that Defendants' motion for summary judgment was granted with respect to Section 1983 claims against Defendants Sherrer and Sanders but denied in all other respects.  Judge Debevoise also denied the motion to dismiss in its entirety.

this case, on October 22, 2004, Sagebiel and Cannon ordered a search of A-Unit, where he resides, using K-9 unit dogs.  They also ordered Plaintiff to submit urine samples to be tested for illegal substances.  After the search, Cannon authorized and ordered false disciplinary charges to be brought against Plaintiff for having illegal substances in the urine sample.  Cannon further authorized and ordered Plaintiff to be placed in segregated confinement.  However, the charges were dismissed by the designated hearing officer because the urine test was deemed improperly authorized.

Plaintiff further alleges that on March 17, 2005, Sagebiel and Cannon once again authorized and ordered NSP officials and K-9 units to conduct a search of Plaintiff's A-Unit.  Plaintiff was subjected to another urine test for illegal substances.  Subsequently, Plaintiff was placed in confinement for the second time.  After twelve days in confinement, a designated hearing officer dismissed the charges and ordered the release of Plaintiff.

On May 20, 2005, Sagebiel and Cannon subjected Plaintiff to a third search of his unit and urine test.  However, this time, Plaintiff was charged with NSP rule infraction .204, possession of prohibited illegal substances.  Plaintiff then sought for a specific investigation to be conducted in lieu of the charges but the request was denied.

Thereafter, on May 23, 2005, Plaintiff complained that Cannon harassed him by having subordinate staff collect urine samples, falsely reporting that he was violating NSP rules, and placing him in confinement for long periods of time without any just cause.  Plaintiff alleges that Cannon investigated the complaint himself and his answer was validated by Sagebiel.  On June 15, 2005, Plaintiff was found guilty by the designated hearing officer and the officer ordered the forfeiture of Plaintiff's good-time, segregated confinement of Plaintiff, and extended the length of Plaintiff's stay in prison.

3

Consequently, Plaintiff now filed the within Motion seeking to include Sagebiel and Cannon as defendants. Plaintiff also seeks to include First Amendment claims against Sagebiel and Cannon contending that they took retaliatory actions against him for filing this action. In addition, Plaintiff contends that because he is an employee of NSP as a tier sanitation worker, he is also entitled to the protection of CEPA.

**<u>Discussion</u>**

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." *Fed. R. Civ. P.* 15(a). The decision to grant or deny leave to amend a pleading is within the discretion of the court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Rule 15(d) governs when a Plaintiff seeks to incorporate claims that occurred after the initial filing of the complaint. Rule 15(d) states, "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense." *Fed. R. Civ. P.* 15(d). Thus, under Rule 15(d), "a party may supplement the original pleading to include subsequent occurrences which are related to the claim presented in the original complaint, absent prejudice to the nonmoving party." *Albrecht v. The Long Island Railroad*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991).

Rules 15(a) and (d) require that "[i]n the absence of any apparent or declared reason - - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.- - the leave sought should, as the rules

require, be freely given." *Foman*, 371 U.S. at 182 (citation omitted); *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) ("amendment must be permitted . . . unless it would be inequitable or futile").

Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). In assessing futility, the court applies the same standard of legal sufficiency as it applies under *Fed. R. Civ. P.* 12(b)(6). *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency. *See id.*

On a motion to dismiss pursuant to Rule 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See Fed. R. Civ. P.* 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**A. First Amendment Retaliation Claims**

The government may not retaliate against an individual for exercising his constitutionally protected right to file grievances.  *See Rauser v. Horn*, 241 F.3d 330 (3d. Cir. 2001).  In order for a prisoner-plaintiff to defeat a Rule 12(b)(6) motion when asserting a retaliation claim, that plaintiff must plead sufficiently to satisfy a three part test.  *See Id.*  First, as a threshold matter, "a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected."  *Id.* at 333 (citation omitted).  Next, the prisoner-plaintiff must show that "he suffered some adverse action at the hands of prison officials."  *Id.* (citation omitted).  The prisoner-plaintiff satisfies this requirement by demonstrating that the action "'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'"  *Id.* (citing *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000)).  Finally, the prisoner-plaintiff must demonstrate that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  *Id.* (citation omitted).

In this case, Sagebiel and Cannon argue that Plaintiff's Proposed Amended Complaint does not state a claim upon which relief may be granted.[5]  Specifically, Defendants argue that Plaintiff cannot merely allege, without factual support, that the events that occurred on October 22, 2004, March 17, 2005, and May 23, 2005 constitute calculated retaliation.  Nor can Plaintiff merely allege that he has been the subject of a campaign of harassment conducted by Sagebiel and Cannon.

Accepting as true all allegations in the Proposed Amended Complaint and all reasonable inferences that can be drawn therefrom, the Court finds that Plaintiff's retaliation claims against

---

[5]Sagebiel and Cannon also argue that since Plaintiff's original Complaint fails to state a claim upon which relief may be granted, Plaintiff's new claims against them should not be permitted.  However, as noted earlier, Judge Debevoise has already denied Defendants' Rule 12(b)(6) motion.

Sagebiel and Cannon would entitle him to relief if the allegations are proven at trial.   It is well-established that Plaintiff has a First Amendment right to file grievances with the Court.   Thus, Plaintiff satisfies the first element by alleging that Sagebiel and Cannon interfered with his constitutional right by taking retaliatory actions against him for filing this suit.

Next, Plaintiff alleges that he was falsely charged with possessing illegal substances after several failed retaliation attempts from Sagebiel and Cannon against him.   Because of the charges, NSP ordered the forfeiture of Plaintiff's good-time, segregated confinement of Plaintiff, and extended the length of Plaintiff's stay in prison.   In addition, Plaintiff alleges that he has also been subjected to threats.   As such, the Court finds that under the particular circumstance, a reasonable person of ordinary firmness may be intimidated to exercise his right to file grievances with the Court.

Finally, Plaintiff has demonstrated a suggestive temporal proximity between the filing of his original Compliant, which was filed on September 27, 2004, and the first instance on October 22, 2004 when Sagebiel and Cannon subjected Plaintiff to false accusations.   *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)(held that suggestive timing is relevant to causation in retaliation cases).   The Court finds that the closeness in time of the alleged instances to the filing of the original Complaint is sufficient to suggest that Sagebiel and Cannon were not merely conducting routine prison searches.   Plaintiff has alleged sufficient facts to indicate that Sagebiel and Cannon's motivation in conducting those searches was suspect.   This is particularly evident because on two occasions the charges brought against Plaintiff were dismissed.   Therefore, Plaintiff has satisfied the last element by demonstrating that his constitutionally protected right was "a substantial or motivating factor" in the decision to discipline him.

Furthermore, Defendants would not be prejudiced by the amendments proposed by Plaintiff

as no new claims are asserted against Defendants, and the Court does not find any dilatory tactics or bad faith on the part of Plaintiff.  Clearly, as newly asserted defendants, Sagebiel and Cannon also would not suffer any prejudice.  Accordingly, Plaintiff is appropriately, under Rule 15(d), supplementing his pleadings with new events that took place after the initiation of this action.

**B.  The CEPA Claims**

Plaintiff seeks to assert CEPA claims against Sagebiel and Cannon for taking retaliatory actions against him for initiating this action.  In order for Plaintiff to sustain his CEPA claims, Plaintiff would have to show that he is the type of employee protected under CEPA.  *N.J.S.A* 34:19-3 states,

> [a]n employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;
>
> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship . . .

*N.J.S.A.* 34:19-3(a) and (b).

Section 34:19-2 defines "employee" as "any individual who performs services for and under the control and direction of an employer for wages or other remuneration."  *N.J.S.A.* 34:19-2(b).

The New Jersey Supreme Court in *Abbamont v. Piscataway Township Bd of Ed.*, 138 N.J. 405 (1994) articulated that CEPA's intended purpose is "to overcome the victimization of employees and to protect those who are especially vulnerable in the workplace from the improper and unlawful

8

exercise of authority by employers." *Id.* at 418.  Further, "CEPA's enactment is 'important to all New Jersey workers who are concerned about working in a safe environment with honest employers.'"  *Id.* at 417(citation omitted).  Therefore, CEPA is only applicable when there is a legitimate employee-employer relationship between the parties.

The term "employee" is not adequately defined within the statute to determine whether Plaintiff is afforded relief under CEPA.  There is no persuasive authority in the state Courts opinions to conclude that an inmate is in fact covered under CEPA.  In fact, according to the New Jersey Supreme Court, the frame work for a CEPA claim follows that of a New Jersey Law Against Discrimination ("LAD") claim. *See Abbamont*, 138 N.J. at 418.  Thus, New Jersey State Courts have applied a twelve-factor test in the context of a LAD claim to determine whether an employment relationship exists between the parties.  This test was set forth by federal courts interpreting analogous federal statutes that do not adequately define the term "employee." *Chrisanthis v. County of Atlantic*, 361 N.J. Super. 448, 454 (App. Div. 2003).[6]  This test examines and considers the following factors:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation–supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

_____

[6]The employment test was formulated in the Third Circuit in *E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32, 27 (3d Cir. 1983) whereby that court defined the term "employee" within the Federal Age Employment Discrimination Act. *See also Franz v. Raymond Eisenhardt & Sons, Inc*., 732 F.Supp. 521, 528 (D.N.J. 1990).

*Id.* at 455 (citation omitted).

This test requires "[a] 'principled application' of the factors and a consideration of which factors are more important under the peculiar circumstances of each case . . ." *Id.* at 456.  The test also requires a reasoned balancing of the factors to determine the existence of an employment relationship.  *Id.*

    Although this issue is one of first impression in this circuit, federal courts have routinely held that inmates are not employees in the context of minimum wages for the purpose of the Federal Fair Labor Standards Act ("FLSA").  *See Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999)(held that inmates performing intra-prison work are not employees under FLSA).  Based on public policy, the Second Circuit Court of Appeals in *Danneskjold v. Hausrath*, 82 F.3d 37 (2d Cir. 1996) reasoned that:

> [t]he relationship is not one of employment; prisoners are taken out of the national economy; prison work is often designed to train and rehabilitate; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers . . .
> As a result, no Court of Appeals has ever questioned the power of a correctional institution to compel inmates to perform services for the institution . . . Such work occupies prisoners' time that might otherwise be filled by mischief; it trains prisoners in the discipline and skills of work; and it is a method of seeing that prisoners bear a cost of their incarceration.

*Id.* at 42-43.

    Each circuit that has addressed the question has concluded that prisoners producing goods and services used by the prison should not be considered employees under the FLSA.  *See Gambetta v. Prison Rehabilitative Indus.*, 112 F.3d 1119, 1124-25 (11th Cir. 1997); *Reimonenq v. Foti*, 72 F.3d 472, 475 n. 3 (5th Cir. 1996); *Henthorn v. Department of Navy,* 29 F.3d 682, 684-87 (D.C. Cir. 1994); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994); *Hale v. Arizona*, 993 F.2d 1387,

1392-98 (9th Cir. 1993)(en banc); *Franks v. Oklahoma State Indus.*, 7 F.3d 971, 972 (10th Cir. 1993);

*Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993); *Miller v. Dukakis,* 961 F.2d 7, 8-9 (1st

Cir. 1992); *Vanskike v. Peters,* 974 F.2d 806, 809-10 (7th Cir. 1992).

Federal courts have also applied the reasoning set forth in the FLSA cases to hold that

inmates are not employees for the purposes of other federal statutes that provide employment

protections.  *See Coupar v. United States Department of Labor*, 105 F.3d 1263, 1264-65 (9th Cir.

1997) (holding that inmates are not employees for purposes of the "whistleblower" provisions of the

Clean Air Act, 42 U.S.C. § 7622, and the Toxic Substance Control Act, 15 U.S.C. § 2622).

This Court will adopt the twelve-part test, as set forth in *Chrisanthis, supra,* to determine

whether Plaintiff in this case qualifies as an employee under CEPA.

Plaintiff claims that he is protected under CEPA because he is an employee of NSP.  Plaintiff

was interviewed for his assignment as a tier sanitation worker.  The assignment requires Plaintiff to

clean daily the housing unit where he and seventy-nine other men live.  Plaintiff receives a daily

stipend as wages for his tasks, and he is entitled to irrevocable work credits that reduce his sentence.

Thus, Plaintiff argues that Sagebiel and Cannon's retaliatory conduct against him violates *N.J.S.A.*

34:19-3 as he has been subjected to threats, false charges, disciplinary sanctions, including the loss

of good-time credits, physical and mental pressure intended to discourage, dissuade and prevent him

from proceeding with the current action.

In light of CEPA's intended purpose and Plaintiff's circumstances, the Court holds that

Plaintiff's CEPA claims against Sagebiel and Cannon are futile, as factors weigh against classifying

Plaintiff as an "employee" under CEPA.  Plaintiff's assignment does not provide him with annual

leave, he does not accrue retirement benefits and neither NSP nor the state pay social security taxes

11

on his behalf.  Although, as Plaintiff argues, his position is not meaningless, Plaintiff's tasks are clearly not an integral part of the business of NSP.  In fact, as suggested by the Second Circuit, these assignments help rehabilitate inmates rather than qualify as employment.  In other words, Plaintiff's assignment arises from the custodial relationship with NSP which earns him a stipend and credits that may reduce his sentence.

The manner in which Plaintiff receives and controls his stipend also suggests that he is not employed by NSP.  Plaintiff's stipend is deposited into a trust account, and he never receives a paycheck.  Plaintiff can then use that fund to buy items from the prison commissary.  The termination of his assignment is controlled by the term of incarceration, and only with good behavior is he even eligible for the assignment.

Under the particular circumstances of this case, the most demonstrative factor is the intent of the parties.  Objectively, it would be preposterous for the Court to suggest that NSP interviewed Plaintiff with the intent of recruiting an inmate as an employee.  It is also unlikely that Plaintiff ever intended NSP to be his employer when he was assigned to his position.  Therefore, a reasoned balancing of the factors concludes that Plaintiff is not an employee within the purview of CEPA.

## C.  Conclusion

For the reasons set forth above, the Motion is granted in part and denied in part.  Plaintiff is permitted to include First Amendment retaliation claims against Sagebiel and Cannon.  However, Plaintiff is precluded from incorporating CEPA claims against them.


_____**s/SUSAN D. WIGENTON**_____
_____UNITED STATES MAGISTRATE JUDGE

12

Orig:   Clerk
cc:     District Judge
        Parties
        File