<u>FOR  PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Michael Kounelis,

                     Plaintiff,

v.

Lydell Sherrer; Carlos Atuncar; Nathaniel
Bush; Eddie Cannon; Canute Forte; Frankie
James; Carlos Perez; Doris Sagebiel; Vincent
Sanders; and William Schwenk,

                     Defendants.

Civ. No. 04-4714 (DRD)

**O P I N I O N**

*Appearances:*

LOWENSTEIN SANDLER PC
by:  Matthew M. Oliver, Esq.
     Ramsey C. Ong, Esq.
65 Livingston Avenue
Roseland, NJ  07068

       *Attorneys for Plaintiff*

ANNE MILGRAM
ATTORNEY GENERAL OF NEW JERSEY
by:  Thomas E. Kemble, Esq.
     Deputy Attorney General
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ  08625

       *Attorney for Defendants*

**DEBEVOISE, Senior District Judge**

This case arises out of a November 14, 2003 altercation between Plaintiff, Michael Kounelis, and guards at the Northern State Prison ("NSP"), in Newark, New Jersey, where Kounelis was an inmate.  Kounelis alleges that guards assaulted him in retaliation for complaints he had made against one of them and that they, and other Defendants, took further action against him that violated his First, Fifth, Eighth, and Fourteenth Amendment rights.  He brings his action under 42 U.S.C. § 1983 and also asserts certain state law claims.  Defendants are Lydell Sherrer, NSP's Administrator; Vincent Sanders, NSP's Director of Custody Operations; Senior Corrections Officers ("SCO") Carlos Atuncar, Nathaniel Bush, William Schwenk; Sergeants Frankie James and Canute Forde; Disciplinary Sergeant Carlos Perez; Captain Doris Sagebiel; and Lieutenant Eddie Cannon.  Defendants contend that Kounelis assaulted a guard and resisted arrest and that none of his federal or state law rights were violated.

Coloring this controversy is the loss of video surveillance footage, purportedly portraying the assault, that was recorded onto a DVR hard drive but not transferred to a more permanent medium.  The circumstances of the November 14, 2003 altercation are hotly contested, rendering the video highly relevant.  Its loss has been the source of much of the litigation in this case—including the current motions.  Now before the Court are the parties' cross-appeals of Magistrate Judge Shwartz's order of October 2, 2007, granting in part and denying in part Kounelis's application for spoliation sanctions against Defendants; Kounelis's motion for summary judgment against Sergeants Forde and Perez for violation of his due process rights; and Defendants' second motion to dismiss, or in the alternative, motion for summary judgment.

2

For the reasons set forth below, the Magistrate Judge's order will be reversed in part and affirmed in part; Kounelis's motion for summary judgment will be denied; and Defendants' motion to dismiss, or in the alternative, for summary judgment will be denied in part and granted in part.

## I.  BACKGROUND

### A.  The November 14, 2003 Altercation

Most of the background facts are set forth in a Stipulation of the parties contained in the Final Pretrial Order.  On the morning of November 14, 2003, Kounelis was in the prison doctor's office when he was informed that he had a visitor.  On receiving this information, Kounelis proceeded from the doctor's office in the North Compound of the prison to the South Compound to get a pass to meet with his visitor.  In order to reach the South Compound from the North Compound, inmates are required to pass through a frisk machine located in the center of the Education Department ("E/D area").  As in other areas of the NSP, surveillance video cameras are mounted on the walls of the E/D area and two cameras in the upper northwest and upper southeast corners of the E/D area are directed towards the frisk machine in the center.

As Kounelis passed through the frisk machine, an altercation between Kounelis and members of NSP staff ensued.  According to Kounelis, he was assaulted by SCO Atuncar. Kounelis submits that the assault was in retaliation for complaints that Kounelis had filed against SCO Atuncar on September 4 and September 11, 2003.

The Defendants' account differs dramatically.  Defendants contend that as Kounelis was passing through the E/D area, he began shouting obscenities at SCO Schwenk and that as Kounelis passed through the frisk machine, he intentionally bumped SCO Schwenk in the chest

3

with his right shoulder.  SCOs Schwenk and Bush then restrained Kounelis, forcing him to the

ground while other officers, including Sergeant James and Lieutenant Cannon, responded to the

emergency situation.

Following the altercation, Kounelis was placed in prehearing detention.  Kounelis was

then taken to NSP's medical facility where he was examined by the medical staff, and one of the

nurses recorded his injuries.  A medical report dated November 14, 2003 states that Kounelis

suffered a right index finger laceration and a left check bone injury.  A doctor's examination on

November 19, 2003 further reports that Kounelis was suffering from a lower back sprain and had

abrasions on both knees and on his left cheek.

Kounelis was issued a disciplinary infraction for assaulting any person for his alleged

assault of SCO Schwenk.  Sergeant Forde, acting as the Disciplinary Sergeant on November 15,

2003, was responsible for investigating the disciplinary charges lodged against inmates and

gathering evidence related to the charges.  He served Kounelis with a copy of the disciplinary

charge and then concluded his investigation shortly thereafter.

The disciplinary charge contained the statement of SCO Schwenk that Kounelis bumped

into SCO Schwenk's chest as Kounelis was passing through the frisk machine in the E/D area

and the statement of SCO Bush that he had witnessed the event.  On receiving the disciplinary

charge, Kounelis maintains that he informed Sergeant Forde that the statements contained in the

charge were incorrect because it was not SCO Schwenk, but rather SCO Atuncar, who had

assaulted him.  Kounelis further maintains that at this time he asked Sergeant Forde for a copy of

the surveillance footage in order to prove his version of the events.

According to Captain Antonio Campos, Defendants' Rule 30(b)(6) witness, the

surveillance system at the NSP records surveillance footage onto a digital video recorder ("DVR").  The footage is only stored on the DVR hard drive for approximately seven to ten days before it is over-written on the hard drive by new footage.  In order for surveillance footage to be preserved, it must be downloaded and recorded onto a video tape.  NSP policy permits inmates to request a copy of surveillance footage for use at a disciplinary hearing and recordings are routinely made on request for later use at various types of administrative proceedings.

Sergeant Forde, however, has no recollection of being asked for the surveillance footage. In addition, Sergeant Forde's report contains no notation that such a request was made. Defendants submit that this is because the request was never made.  Because the report contained no notation, Sergeant Perez, who took over the investigation of Kounelis's disciplinary infraction on November 17, 2003, claims that he did not know that a request for surveillance footage had been made.

Kounelis also claims to have requested a copy of the surveillance footage from Hearing Officer Gary Styer.  Kounelis met with Hearing Officer Styer on several occasions prior to the disciplinary hearing.  In addition to making verbal requests for the surveillance footage, Kounelis submitted written confrontation questions to be used at the disciplinary hearing which referred to the surveillance footage.  Yet no copy of the surveillance footage was ever provided to Kounelis.

A prison disciplinary hearing was held on December 5, 2003.  Kounelis pleaded "not guilty" to the disciplinary charge of assaulting any person.  After hearing the evidence, including SCO Bush's corroborative account of the altercation, Hearing Officer Styer modified the charge against Kounelis from assault to unauthorized contact.  Kounelis was then found guilty of unauthorized contact and sanctioned with fifteen days detention.

Kounelis appealed the adverse decision within the NSP, filed a claim for tort damages with New Jersey Bureau of Risk Management, and filed additional administrative complaints against SCO Atuncar.  In the administrative complaints, Kounelis stated that SCO Atuncar had warned him not to file a civil action regarding the November 14, 2003 incident or else he would be taught another lesson.  Kounelis also requested that his cell be relocated to an area of the NSP farther away from SCO Atuncar.

## B.  The § 1983 Action

When none of these administrative actions yielded a favorable result, Kounelis filed a pro se complaint on September 27, 2004.  The six counts of the Complaint seek relief, pursuant to 42 U.S.C. § 1983, for violations of Kounelis's First, Fifth, Eighth, and Fourteenth Amendment rights and compensation for intentional infliction of emotional distress and negligence.[1]

In his Complaint, Kounelis alleges that he was assaulted by SCOs Atuncar, Schwenk, and Bush because he filed administrative complaints against SCO Atuncar.  The Complaint explains that on September 4, 2003, Kounelis filed an Administrative Remedy Form stating that SCO Atuncar denied him access to the NSP law library because he was allegedly wearing improper footwear.  On September 11, 2003, Kounelis claims that he was again denied entry to the law library by SCO Atuncar, who warned him not to file any more complaints.  Kounelis reported this interaction in another Administrative Remedy Form, which described how SCO Atuncar had threatened to set Kounelis up and retaliate against him through his subordinates if Kounelis

---

[1] The Complaint originally included the Northern State Prison and the Department of Corrections among the named defendants, but on February 23, 2005, the Court issued a <u>sua sponte</u> order dismissing the Northern State Prison and the Department of Corrections from the case because they do not qualify as "persons" under § 1983.

continued to file complaints against him.

Kounelis further alleges that SCO Atuncar carried out his threats by attacking him as he passed through the E/D area on November 14, 2003, and that, to cover up the assault, SCOs Atuncar, Schwenk, and Bush caused a false disciplinary infraction for assault to be issued against him. Finally, the Complaint alleges that Kounelis made repeated requests to several members of NSP staff for a copy of the surveillance footage from the E/D area, but that a copy of the video was never produced.

In response to Kounelis's Complaint, Defendants filed a motion for summary judgment, or in the alternative, to dismiss for failure to state a claim. In an opinion issued on September 5, 2005, the Court denied Defendants' motion to dismiss and granted in part and denied in part Defendants' motion for summary judgment. Kounelis v. Sherrer, 2005 U.S. Dist. LEXIS 20070 (D.N.J. Sept. 5, 2005).

The Court found that the Complaint stated a claim for excessive force under the Eighth Amendment and therefore denied Defendants' motion to dismiss. The Court also denied Defendants' motion for summary judgment on the ground that Kounelis had failed to exhaust his administrative remedies. Finally, the Court denied Defendants' motion for summary judgment on the grounds that Sergeant James, Sergeant Perez, SCO Schwenk, and SCO Bush were entitled to a qualified immunity defense because the Complaint sufficiently alleged that Defendants had violated a clearly established constitutional right. Summary judgment was granted, however, in favor of Administrator Sherrer and Director of Custody Operations Sanders, because the Complaint contains no allegations of their personal involvement in the denial of Kounelis's constitutional rights and vicarious liability cannot be used to impose liability under § 1983.

7

While the Defendants' motion to dismiss was pending, Kounelis moved to amend his Complaint. On October 20, 2005, then Magistrate Judge Wigenton granted the motion in part. Kounelis v. Sherrer, 396 F. Supp. 2d 525 (D.N.J. 2005). By the Magistrate Judge's order, Kounelis was permitted to add Captain Doris Sagebiel and Lieutenant Eddie Cannon as Defendants and supplement his Complaint with allegations that Captain Sagebiel and Lieutenant Cannon retaliated against him for proceeding with his civil action.

Specifically, Kounelis included allegations that on October 22, 2004, not long after the original Complaint was filed, Captain Sagebiel and Lieutenant Cannon ordered a search of his cell. Following the search, Kounelis was required to submit to a urine drug test and issued a disciplinary infraction. The charge, however, was dismissed because the urine test was deemed improperly authorized. Indeed, the hearing officer stated that in the future, the charging officers needed to do a better job explaining why a drug test was needed before subjecting the inmate to the urine test. Despite the finding of not guilty, Kounelis spent eleven days in administrative segregation.

Kounelis also included allegations that on March 17, 2005, two weeks after Defendants were served with summonses, Captain Sagebiel and Lieutenant Cannon ordered another search of his cell. Again, following the search, Kounelis was required to submit to a urine drug test and was placed in administrative segregation while disciplinary charges were pending against him. The charges, however, were again dismissed and Kounelis was returned to his cell after spending twelve days in administrative segregation.

Finally, Kounelis included allegations that on May 20, 2005, just over a month after Kounelis moved for a Default Judgment to be entered against Defendants, Captain Sagebiel and

Lieutenant Cannon ordered a third search of his cell. Following the May 20 search, Kounelis was again required to submit a urine sample for a drug test and was charged with the use of a prohibited substance.[2]

Following the addition of Kounelis's new allegations, discovery commenced. Kounelis maintains that he pursued discovery from Defendants and various third-parties, but that Defendants frustrated his efforts and caused significant delay. Most notably, Defendants initially refused to make any of their witnesses available for deposition. Indeed, Defendants did not appear at appropriately noticed depositions until Magistrate Judge Hedges entered an order on February 13, 2007 requiring that Defendants appear for depositions and that Defendants produce a Rule 30(b)(6) witness to testify regarding the surveillance system at the prison.

Despite the Magistrate Judge's order, further delay ensued. Defendants finally produced Jose Raboy, an Investigator in the Special Investigations Division, as their Rule 30(b)(6) witness for deposition on June 4, 2007. Raboy, however, had done virtually nothing to prepare for the deposition and knew little about the NSP's video surveillance system. Because Raboy was unable to testify about the subject matter identified in the Rule 30(b)(6) deposition notice, Kounelis requested that Defendants produce another witness with the requisite knowledge. Defendants refused. Thus Kounelis had no other alternative but to return to court and apply for an order compelling Defendants to designate a new Rule 30(b)(6) witness who was properly prepared to answer questions about the NSP's video surveillance system.[3]

---

[2] At the disciplinary hearing held on June 13, 2005, Kounelis was found guilty of the infraction and sanctioned accordingly.

[3] Captain Antonio Campos, the officer in charge of security policy and procedure at NSP, was produced by Defendants on June 17, 2007.

**C.  The Magistrate Judge's Opinion and Order**

At the conclusion of discovery, Kounelis filed an informal application for sanctions based on Defendants' failure to preserve the video surveillance footage taken by cameras in the E/D area on November 14, 2003.  An evidentiary hearing was held before Magistrate Judge Shwartz on September 24, 2007.  The evidentiary hearing lasted more than four hours, during which the Magistrate Judge admitted eleven exhibits into evidence and heard testimony from six witnesses: Kounelis, Captain Antonio Campos, Defendants' Rule 30(b)(6) witness; Discipline Hearing Officer Gary Styer; Administrator Sherrer; Sergeant Perez; and Sergeant Forde.

On October 2, 2007, after carefully considering the hearing testimony and evidence, the Magistrate Judge entered an oral opinion into the record and issued an order that granted in part and denied in part Kounelis's request for sanctions.  In reaching the ultimate conclusion that Defendants were responsible for the spoliation of evidence, the Magistrate Judge first found, based on the testimony of Captain Campos, that the cameras in the E/D area would have captured any events occurring near or around the frisk machine on November 14, 2003.  (Op. Tr. at 4.)  In addition, the Magistrate Judge found that in order for surveillance footage to be preserved, it must be recorded on to a VHS tape before the footage is overwritten on the DVR hard drive and that such a recording would only occur following a request from the custody officers, the prison administration, or by the special investigation division.  Id.  Finally, the Magistrate Judge found that no request to record the surveillance footage from November 14, 2003 had been made.  (Op. Tr. at 5.)

Despite the finding that Captain Campos had received no request to record the surveillance footage from November 14, 2003 and Sergeant Forde's testimony that he could not

recall whether Kounelis had requested a copy of the surveillance footage, the Magistrate Judge found that requests for a copy of the surveillance footage had been made in the days following the November 14, 2003 altercation.  (Op. Tr. at 5.)  In reaching this finding, the Magistrate Judge looked to Kounelis's undisputed testimony that he verbally requested a copy of the surveillance footage from Sergeant Forde when Sergeant Forde served him with the disciplinary charge.

In addition, the Magistrate Judge found that a request had been made to Hearing Officer Styer on November 20, 2003, six days after the incident, both verbally and by way of written questions submitted for the purpose of confrontation at the disciplinary hearing.  The Magistrate Judge also relied on Hearing Officer Styer's notes from his meeting with Kounelis on November 25, 2003, which stated that Kounelis wanted to see a video of the incident (Op. Tr. at 8-9) and an affidavit signed by Kounelis on November 30, 2003 which attested that Kounelis had asked Sergeant Forde for a copy of the footage during his investigation of the incident (Op. Tr. at 5).

Based primarily on the finding that Kounelis had requested a copy of the surveillance footage, the Magistrate Judge concluded that Defendants were under a duty to preserve the footage as relevant evidence.  (Op. Tr. at 19.)  Having determined that Defendants had a duty to preserve the surveillance footage, the Magistrate Judge reviewed the evidence and found that no copy of the surveillance tape was in existence or probably ever had been in existence.  The Magistrate Judge surmised that the surveillance footage was likely overwritten because no effort had been made to transfer it from the DVR hard drive to a VHS tape for preservation.  (Op. Tr. at 13.)  In addition, the Magistrate Judge noted that no testimony was offered by Defendants to explain why, despite the documented interest in a copy of the surveillance footage, no action had been taken to preserve the footage.  (Op. Tr. at 13.)

11

Thus, having concluded that Defendants had an obligation to preserve the surveillance footage and that the evidence was lost, the Magistrate Judge then considered what, if any, sanctions should be imposed on Defendants for the loss of the evidence.  (Op. Tr. at 21.)  The Magistrate Judge explained that the imposition of sanctions is left to the discretion of the court after considering the degree of fault of the party that destroyed the evidence, the degree of prejudice suffered by the opposing party, and whether the sanction balances fairness to the opposing party and deterrence to the offending party.  (Op. Tr. at 22.)

In considering the first of the three factors, the Magistrate Judge found that Defendants were to blame for the loss of the surveillance footage. (Op. Tr. at 23.)  Next, the Magistrate Judge concluded that Kounelis was prejudiced by the loss of objective evidence, but not irreparably, because Kounelis was still able to testify as to his version of the events.  (Op. Tr. at 25.)  Finally, the Magistrate Judge determined that preventing Defendants from offering their version of the events of November 14, 2003 at trial, as Kounelis had requested, would be too severe a sanction because it would be tantamount to denying Defendants the ability to defend against Kounelis's claims.  (Op. Tr. at 26.)  Therefore the Magistrate Judge denied Kounelis's request that Defendants be precluded from introducing evidence.

Having determined that exclusion of Defendants' evidence was too extreme, the Magistrate Judge then considered whether the lesser sanction of an adverse inference was appropriate.  (Op. Tr. at 27.)  Applying the elements of the adverse inference to the evidence in the record, the Magistrate Judge concluded that an adverse inference was not appropriate under the circumstances because it would over-compensate Kounelis for the harm caused by the spoliation.  (Op. Tr. at 30.)  The Magistrate Judge reasoned that an adverse inference was

tantamount to a directed verdict because it took too much from the fact-finder.  (Op. Tr. at 31.)
Therefore the Magistrate Judge denied Kounelis's request for an adverse inference charge.

Next, the Magistrate Judge considered whether monetary sanctions would be appropriate.
(Op. Tr. at 33.)  The Magistrate Judge found that a great deal of time was spent both by Kounelis
in his pro se status and by his counsel chasing after the surveillance footage throughout discovery
and culminating in the evidentiary hearing.  (Op. Tr. at 34.)  Indeed, the Magistrate Judge noted
that a memorandum dated September 2, 2004, which was sent to Kounelis by the Acting Chief
Investigator of the Special Investigations Division in response to Kounelis's communication to
then Attorney General Peter G. Harvey regarding Kounelis's allegations of harassment, abuse,
and the subsequent cover up, appeared, albeit somewhat ambiguously, to indicate that
investigators of Kounelis's allegations may have reviewed a tape of the surveillance footage.
(Op. Tr. at 12.)  Upon receipt of this memorandum, the Magistrate Judge described how
Kounelis then expended unnecessary time by submitting further requests for a copy of the
surveillance footage, only to be informed by letter dated September 8, 2004 that no tape of the
footage from November 14, 2003 existed.  (Op. Tr. at 13.)

In addition, the Magistrate Judge noted that time could have been saved if Defendants had
not suggested in their reply brief, submitted in support of their first motion to dismiss, that
surveillance footage had been reviewed by NSP officers.  (Op. Tr. at 35.)  The Magistrate Judge
described a section of Defendants' reply brief as contending that surveillance videos contained
confidential information and to disclose such footage would somehow compromise the security
of the prison.  Id.  The Magistrate Judge stated that these assertions regarding confidentiality
seemed to presuppose that a tape was in existence and that it had been reviewed by officers

13

within NSP.  (Op. Tr. at 35.)  But, the Magistrate Judge continued, the evidence clearly revealed that no tape is, or ever was, in existence.  (Op. Tr. at 36.)

On the basis of these findings, the Magistrate Judge concluded that monetary sanctions were appropriate to compensate Kounelis and his counsel for the resources expended and to assist in deterring future conduct.  (Op. Tr. at 34.)  The Magistrate Judge refused, however, to grant Kounelis's application for attorneys' fees.  In refusing this request, the Magistrate Judge noted that Kounelis was represented by pro bono counsel and that nothing had been brought to her attention that supported the award of attorneys' fees as a spoliation sanction where the injured party was represented by pro bono counsel.  Id.

After reaching these conclusions, the Magistrate Judge issued an order implementing her findings.  Specifically, it was ordered that Defendants pay all of Kounelis's costs associated with discovery concerning the videotape and the evidentiary hearing and that Defendants pay $3,000 to the District of New Jersey's pro bono fund.  The Magistrate Judge denied, however, Kounelis's application for attorneys' fees and Kounelis's request for an adverse inference as a result of the finding of spoliation.  The Magistrate Judge also denied Kounelis's request to preclude Defendants from introducing evidence concerning Kounelis's actions in the E/D area.  Finally, it was ordered, that nothing precluded Kounelis from introducing evidence of his request for a copy of the surveillance footage or Defendants' failure to preserve or produce it and arguing that the jury draw inferences on the basis of those facts.

## II.  APPEAL OF THE MAGISTRATE JUDGE'S ORDER

Both parties appeal the Magistrate Judge's October 2, 2007 order.  Defendants[4] object to the Magistrate Judge's finding that they were under a duty to preserve evidence and therefore claim that it was error for the Magistrate Judge to impose any sanctions against them for spoliation of evidence.  For his part, Kounelis seeks review of the Magistrate Judge's refusal to grant a spoliation inference and the Magistrate Judge's denial of his application for attorneys' fees.  For the reasons set forth below, the Court concludes that Defendants had a duty to preserve evidence and therefore spoliation sanctions are appropriate; that an adverse inference jury charge is warranted; that Kounelis is entitled to an award of attorneys' fees; and that Defendants should be relieved of their obligation to pay $3,000 to the District of New Jersey's pro bono fund.

**A.  Standard of Review under Federal Rule of Civil Procedure 72**

Under Federal Rule of Civil Procedure 72(a) and Local Civil Rule 72.1(a), a magistrate judge is permitted to hear and determine non-dispositive matters.  When appropriate, a magistrate judge is permitted to "issue a written order stating the decision" on non-dispositive matters.  Fed. R. Civ. P. 72(a).  Non-dispositive matters include evidentiary rulings, Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998), pretrial discovery matters, Andrews v. Goodyear Tire & Rubber Co., 191 F.R.D. 59, 68 (D.N.J. 2000), and the imposition of sanctions for discovery abuses, Wachtel v. Guardian Life Ins. Co., 232 F.R.D. 213, 217 (D.N.J. 2005).  See also L. Civ. R. 72.1 cmt. 3 (listing various types of non-dispositive motions).

Any party who objects to a magistrate judge's order on a non-dispositive matter may file

---

[4] The Magistrate Judge's October 2, 2007 order notes that sanctions were sought against Defendants collectively because the parties never specified which Defendants would be subjected to any imposed monetary sanctions.  The order instructed the parties to confer in order to determine whether further specificity was required.  The Court, having heard no objection from either party as to this arrangement, will leave the Magistrate Judge's instructions undisturbed.

objections within ten days of service of the order.  Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1).

The district judge assigned to the case is required to "consider timely objections and modify or

set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P.

72(a).  A magistrate judge's finding is clearly erroneous when, although there may be some

evidence to support it, the reviewing court, after considering the entirety of the evidence, is "left

with the definite and firm conviction that a mistake has been committed."  Dome Petroleum Ltd.

v. Employers Mut. Liab. Ins. Co., 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting United States v. U.S.

Gypsum Co., 333 U.S. 364, 395 (1948)).  A ruling is contrary to law if the magistrate judge has

misinterpreted or misapplied applicable law.  Gunter, 32 F. Supp. 2d at 164.  The burden of

showing that a ruling is "clearly erroneous or contrary to law rests with the party filing the

appeal."  Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).  However, "[w]here a

magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only

for an abuse of discretion."  Rhett v. N.J. State, 2007 U.S. Dist. LEXIS 35350, at *4 (D.N.J. May

14, 2007).

**B.  Duty to Preserve Evidence**

      Before sanctions for spoliation can be imposed, it must be determined whether the duty to

preserve evidence has been triggered.  An independent duty to preserve relevant evidence arises

when the party in possession of the evidence knows that litigation by the party seeking the

evidence is pending or probable and the party in possession of the evidence can foresee the harm

or prejudice that would be caused to the party seeking the evidence if the evidence were to be

discarded.  See Joe Hand Promotions v. Sports Page Cafe, 940 F. Supp. 102, 104 n.13 (D.N.J.

1996); see also Baliotis v. McNeil, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994).  If, however, the

duty to preserve evidence has not been triggered at the time the evidence was destroyed, then there can be no spoliation.

In this case, the Magistrate Judge found that Defendants' duty to preserve evidence had been triggered.  After reviewing the record, the Court concludes that the Magistrate Judge's conclusion as to the Defendants' duty to preserve evidence is neither erroneous nor contrary to law.  Ample evidence supports the Magistrate Judge's determination that Defendants' duty to preserve evidence had been triggered.  First, there can be no question that the surveillance footage was relevant, not only to the current litigation, but also to the pending disciplinary proceeding.  The surveillance footage is the most cited objective evidence in this highly contested dispute over who instigated the altercation in the E/D area on November 14, 2003.  Furthermore, Defendants were aware that a disciplinary hearing was imminent.  Indeed, Sergeant Forde served Kounelis with the disciplinary charge on the day following the altercation.

Finally, Defendants should have been able to foresee the harm or prejudice that would have been caused to Kounelis by the non-preservation of the evidence.  In a case of one person's word against the word of another, the unbiased eye of a surveillance camera would lend a great deal of credibility to one side's version of the events.  Moreover, the record clearly establishes that preservation of surveillance footage for use at disciplinary or other administrative proceedings is commonplace within the NSP and that Kounelis requested preservation of the surveillance footage from several members of NSP staff.  Thus, as the Magistrate Judge correctly observed, given the seriousness of the disciplinary charge, the divergent accounts of the events, the high degree of relevance of the evidence, the immanence of the disciplinary proceeding, the repeated requests for production of the evidence, and the ordinary and routine nature of the

17

request, it is beyond a doubt that under the particular circumstances of this case,[5] Defendants'

duty to preserve the surveillance footage was indeed triggered.[6]

## C.  Spoliation Sanctions are Appropriate

Having concluded that Defendants had a duty to preserve evidence, the Court must next

determine whether the Magistrate Judge erred in her conclusion that Defendants should be

sanctioned for spoliation of evidence.  Spoliation is the "destruction or significant alteration of

evidence, or the failure to preserve property for another's use as evidence in pending or

reasonably foreseeable litigation."  <u>MOSAID Tech. Inc. v. Samsung Elec. Co.</u>, 348 F. Supp. 2d

332, 335 (D.N.J. 2004).  Spoliation occurs when a party has intentionally or negligently breached

its duty to preserve potentially discoverable evidence.  To provide redress to the party harmed by

spoliation, as well as to punish the spoliator, a court may impose appropriate sanctions pursuant

to the Federal Rules of Civil Procedure and the court's inherent powers.  <u>Id.</u>  Sanctions for

spoliation include: "dismissal of a claim or granting judgment in favor of a prejudiced party;

suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and

attorneys' fees and costs."  <u>Id.</u>

In determining whether spoliation sanctions are appropriate, the two key considerations

_____

[5] Because the Court is merely addressing the factual circumstances of the case at hand and not attempting to establish a general duty to preserve all surveillance footage, Defendants' policy argument that it would be unduly cumbersome to preserve evidence in every disciplinary proceeding is unpersuasive.  Indeed, the conclusion that Defendants' duty to preserve the surveillance footage was triggered arises as much from NSP's own policy of providing such footage for use in administrative proceedings and Kounelis's repeated requests for such footage as it does from the pending administrative proceeding.

[6] Given these circumstances, Defendants' argument that litigation was not foreseeable at the time when preservation was possible cannot possibly absolve them of their duty to preserve evidence in this case.

are the "degree of fault of the party who altered or destroyed the evidence" and "the degree of prejudice suffered by the opposing party."[7]  Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994).  In this case, the Magistrate Judge found that some form of spoliation sanctions were warranted because Defendants were to blame for the loss of the evidence and because Kounelis would be prejudiced by its loss.

Spoliation sanctions are warranted by the circumstances of this case.  As the Magistrate Judge's findings show, Defendants are at fault for the loss of the evidence.  There is no dispute that Defendants were in control of the DVR hard drive that contained the surveillance footage.  Furthermore, the Magistrate Judge found that Kounelis made several requests for a copy of the footage and that no effort was made on the part of Defendants to follow up on Kounelis's requests.  Kounelis will also be prejudiced by a loss of the evidence.  Now, instead of having objective evidence that could corroborate his version of events, Kounelis is left with his word against the word of Defendants.

**D.  Spoliation Inference**

Having concluded that some form of spoliation sanction is warranted, the Court now considers whether the Magistrate Judge abused her discretion in denying Kounelis's request for an adverse inference.  An adverse inference for spoliation of evidence, or a spoliation inference, "permits a jury to infer that destroyed evidence might or would have been unfavorable to the position of the offending party."  MOSAID Tech. Inc., 348 F. Supp. 2d at 336.  The spoliation

---

[7] When determining whether a particular sanction is appropriate, a third consideration becomes relevant.  In addition to the first two considerations, a court must also ask whether "there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid, 13 F.3d at 79.

inference is a permissive inference that is predicated on the "common sense observation" that when a party to an adversarial proceeding destroys relevant evidence it is likely done out of fear that the evidence would be harmful to that party. Id. Because of the implication that the destroyed evidence would harm the destroying party, the spoliation inference serves the remedial function of leveling the playing field after a party has destroyed or withheld relevant evidence. Id. at 338. As such, the spoliation inference can be seen as primarily remedial in nature, as opposed to punitive.

Four elements must be satisfied in order for a party to be entitled to an adverse inference. First, the destroyed evidence must be found to have been in the alleged spoliator's control. MOSAID Tech. Inc., 348 F. Supp. 2d at 336. Second, it must "appear that there has been actual suppression or withholding of the evidence." Id. Third, the destroyed evidence must be found to be relevant to a claim or defense of the party seeking the evidence. Id. Finally, it must have been reasonably foreseeable to the spoliator that the evidence would be subject to discovery. Id. A court, after finding all of these elements, has the discretion to impose an adverse inference against the party responsible for the spoliation in order to level the playing field for the injured party.

Kounelis, in his appeal from the Magistrate Judge's order, argues that in light of the Magistrate Judge's findings, it was an abuse of discretion for the adverse inference to be denied. As an initial matter, Kounelis disputes the Magistrate Judge's conclusion that Kounelis will not suffer prejudice because he will be able to testify to his version of the events. To the contrary, Kounelis argues that he will indeed be prejudiced by the loss of the objective evidence without the adverse inference. In addition, Kounelis submits that an adverse inference is not the

equivalent of a directed verdict and that it was error for the Magistrate Judge to consider the effect of the adverse inference on his due process claim.  Kounelis therefore asserts that because all of the elements of an adverse inference have been satisfied, he is entitled to a spoliation inference.

Kounelis is not entitled to an adverse inference simply on the basis of the Magistrate Judge's finding that all of the elements of the adverse inference have been met.  "There is no rule of law mandating a particular sanction upon a finding of improper destruction or loss of evidence; rather, such a decision is left to the discretion of the court."  Jama v. Esmor Corr. Serv., 2007 U.S. Dist. LEXIS 45706, at *126 (D.N.J. Jun. 25, 2007).  Thus a magistrate judge may, despite a finding that all of the elements entitling a party to an adverse inference have been met, exercise her discretion and decide not to grant a request for an adverse inference.

Here, however, it was an abuse of discretion to deny the request for an adverse inference charge.  Kounelis's testimony is challenged by the testimony of an array of SCOs, thus putting the word of a convicted felon against the collective testimony of the prison authorities.  In these circumstances, the Magistrate Judge's finding that Kounelis would not be irreparably prejudiced because he could testify cannot be sustained.  Moreover, an adverse inference would not be tantamount to a directed verdict.

Furthermore, there is no "lesser sanction that will avoid substantial unfairness to [Kounelis]."  Schmid, 13 F.3d at 79.  As a permissive inference, the spoliation inference is primarily remedial because it serves to "level[] the playing field after a party has destroyed or withheld evidence."  MOSAID Tech. Inc., 348 F. Supp. 2d at 338.  And as a permissive inference, a jury is allowed, but not required, to draw the common sense conclusion.  Thus, the

21

adverse inference merely informs a jury that it is permitted to infer that the destroyed evidence might have been unfavorable to Defendants' position, which is something that the Magistrate Judge indicated that Kounelis would be able to argue despite her denial.  In addition, granting the adverse inference does not prevent Defendants from producing evidence at trial to counter the inference.  Accordingly, the Court will reverse the Magistrate Judge's order denying Kounelis's request for an adverse inference and will instruct the jury at trial that it is permitted to infer that the footage captured by the surveillance cameras was unfavorable to Defendants.

**E.  Attorneys' Fees and Costs**

In addition to the adverse inference issue, Kounelis appeals the Magistrate Judge's refusal to award attorneys' fees on the grounds that his counsel is acting pro bono as contrary to law. Kounelis argues that it is improper to deny attorneys' fees where they are otherwise warranted simply because of the pro bono nature of counsel's representation.  Therefore, Kounelis asks the Court to reverse the Magistrate Judge's denial of his request and award him attorneys' fees.

Defendants, for their part, object to the Magistrate Judge's imposition of discovery costs as clearly erroneous.  According to Defendants, any sanction relating to their conduct during discovery is inappropriate because they have consistently maintained that no tape of the surveillance footage existed.  Therefore, Defendants ask for reversal of the Magistrate Judge's imposition of monetary sanctions.

A review of the record reveals that the Magistrate Judge committed no error in imposing a monetary sanction against Defendants and awarding Kounelis costs associated with the discovery of the surveillance footage.  As the Magistrate Judge correctly stated, monetary sanctions are used to compensate a party for "the time and effort it was forced to expend in an

effort to obtain discovery" to which it was entitled.  MOSAID Tech. Inc., 348 F. Supp. 2d at 339.

In this litigation, an excessive and unnecessary amount of time was spent by Kounelis and his

counsel chasing Defendants on the issue of the surveillance footage.

Indeed, as the Magistrate Judge noted, just prior to Kounelis filing his Complaint, he

received a communication from the Acting Chief Investigator of the Special Investigations

Division, which, in its ambiguity, suggested that a tape of the altercation may have at one time

been in existence.  Additionally, Defendants' assertions in their reply brief submitted in support

of their first motion to dismiss and motion for summary judgment seemed to presuppose the

existence of the surveillance footage.  These assertions regarding the confidential nature of

surveillance footage further suggested that surveillance footage had been reviewed by NSP

officers but would not be turned over to Kounelis for security reasons.  Not only were these

assertions not representative of reality, they demonstrated a lack of candor towards Kounelis and

the Court, and required Kounelis to expend additional time and effort in order to confirm the fact

of the footage's non-existence and earlier obliteration.

Although not mentioned in the Magistrate Judge's opinion, the Court also notes

Defendants' uncooperative conduct in producing a Rule 30(b)(6) witness.  Not only did

Defendants delay in producing a person with knowledge of the prison's surveillance system, but

when a Rule 30(b)(6) witness was eventually produced, he was unprepared and unable to answer

counsel's questions.  When Defendants refused to produce another witness, Kounelis was

required to go before the Magistrate Judge and receive an order that Defendants produce a

suitable Rule 30(b)(6) witness.  Only after the deposition of Captain Campos was Kounelis able

to be certain that no tape was ever made of the November 14 incident.

23

Defendants' diversionary tactics and lack of candor toward both Kounelis and the Court

has undeniably lead to unnecessary delay in this action and unnecessary expense to Kounelis and

his counsel.  Thus, the Magistrate Judge committed no error in requiring that Defendants pay

Kounelis's and his counsel's costs in relation to the discovery of the surveillance tape as a

sanction for their conduct.  Defendants' hollow assertion that they have consistently maintained

that no tape has been in existence is entirely unpersuasive in light of the pretrial proceedings to

date.  Therefore, the Magistrate Judge's imposition of costs as a monetary sanction will be

upheld.

In addition, Kounelis is also entitled to an award of attorneys' fees.  Although the

Magistrate Judge was not made aware of any legal authority that would enable her to award

attorneys' fees as a spoliation sanction when the injured party is represented by pro bono counsel,

abundant authority exists that supports the principle that the status of counsel's representation

has no affect on the appropriateness of an award of attorneys's fees.  See, e.g., Blanchard v.

Bergeron, 489 U.S. 87, 95 (1989) (noting that a nonprofit legal services organization is not

precluded from an award of reasonable attorneys' fees as the prevailing party in a § 1983 action

simply because it may contractually have agreed not to charge its client a fee); Shadis v. Beal,

685 F.2d 824, 830 (3d Cir. 1982) (noting the well settled principle that courts award "attorney's

fees without regard to plaintiffs' ability to pay for counsel"); Miller v. Apartments & Homes, 646

F.2d 101, 112 (3d Cir. 1981) (awarding attorneys' fees to pro bono counsel and rejecting the

argument that the award was a windfall).[8]  Therefore, the Magistrate Judge's order denying

---

[8] Defendants' attempt to distinguish the cases cited by Plaintiff on the basis that they deal with the award of attorneys' fees under 42 U.S.C. § 1988 is unavailing.  The broad principle represented by these cases is that attorneys' fees should be awarded where warranted and without

Kounelis's request for attorneys' fees will be reversed and attorneys' fees for the time spent on the discovery related to the surveillance tape, including subpoenas, depositions and the evidentiary hearing, will be awarded to Kounelis.

**F. Payment to the District of New Jersey's <u>Pro</u> <u>Bono</u> Fund**

Instead of awarding attorneys' fees to Kounelis, the Magistrate Judge imposed a fine of $3,000 payable by Defendants to the District of New Jersey's pro bono fund.  The fine was imposed as a sanction on Defendants, not for spoliation of the evidence, but rather for their lack of candor with the Court.  However, because the Court has factored this conduct by Defendants into its award of attorneys' fees to Kounelis, the additional fine is unnecessary.  Therefore, the order that Defendants pay $3,000 to the District of New Jersey's pro bono fund will be reversed.

### III.  CROSS-MOTIONS FOR SUMMARY JUDGMENT

Both parties have also moved for summary judgment.  Kounelis limits his motion to Sergeants Forde and Perez and seeks summary judgment against them on his § 1983 claim that they violated his due process rights.  Defendants are seeking summary judgment on all of Kounelis's claims.[9]  For the reasons set forth below, Kounelis's motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted as to Kounelis's intentional infliction of emotional distress claim but denied in all other respects.

**A. Standard of Review under Federal Rule of Civil Procedure 56(c)**

_____

regard to the type of fee arrangement that a litigant has with his counsel.

[9] Defendants style their motion as a motion to dismiss, or in the alternative, as a motion for summary judgment, but since the Court has previously denied a motion to dismiss by Defendants that made very similar arguments, the Court will construe Defendants' motion only as a motion for summary judgment.

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

On a summary judgment motion, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The non-moving party, however, cannot create a genuine issue of material fact by simply replacing the conclusory allegations of the complaint with conclusory allegations in an affidavit; rather the non-moving party must set forth specific facts showing that there is a genuine issue for trial.

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See

26

Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  If there are no issues that require a trial, then judgment as a matter of law is appropriate.

**B.  Plaintiff's Motion for Summary Judgment against Sergeants Forde and Perez**

Kounelis moves for summary judgment against Sergeants Forde and Perez for violation of his due process rights.  Kounelis asserts that his due process right to present evidence at his prison disciplinary proceeding was violated when Defendants failed to provide him with a copy of the surveillance footage from the E/D area.  Kounelis argues that Sergeants Forde and Perez, as the Disciplinary Sergeants, were required to thoroughly investigate the incident and marshal all relevant evidence for use at the disciplinary hearing.  Thus, Kounelis submits, because the Court has already concluded that his due process rights were violated by the non-production of relevant evidence and because Sergeants Forde and Perez were the parties charged with the responsibility of marshaling the relevant evidence, there are no questions of material fact.  Because the Court finds that questions of fact exist, summary judgment will be denied.

In order to prove his § 1983 claim against Sergeants Forde and Perez, Kounelis must show that they were acting under color of state law and that while acting under color of state law, they deprived him of a right secured by the Constitution.  See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  There is no question that at all relevant times, Sergeants Forde and Perez were acting under color of state law.  Because both of them were corrections officers at a state prison, this element of Kounelis's claim is not in dispute.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 n.18 (1982)

("[S]tate employment is generally sufficient to render the defendant a state actor.").  Nor is there

any question that Kounelis had a due process right to "marshal the facts and prepare a defense" in

his disciplinary hearing because "the right to present evidence is basic to a fair hearing."  Young

v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

There is, however, a factual question as to whether Sergeants Forde and Perez were

responsible for the deprivation of Kounelis's due process right.  Kounelis maintains that he made

multiple requests, both verbal and written, for a copy of the surveillance footage and that, as part

of a thorough investigation of the disciplinary charge, Defendants participating in the disciplinary

proceeding should have at least reviewed the surveillance footage.  Sergeant Forde, however,

maintains that he cannot recall whether such a request was ever made and submits that no such

request was reflected in his incident report.  Sergeant Perez maintains that no such request was

ever made to him directly or passed to him through another officer.  Although Captain Campos

testified in his deposition that NSP permits surveillance footage to be used in disciplinary

proceedings and that in a case of an alleged assault by an officer, the surveillance footage should

have been at least reviewed, if not preserved, Defendants submit that the high volume of

disciplinary infractions makes it unreasonable to review surveillance footage in connection with

every infraction.

Thus, the question must be put to a jury.  If a jury finds by a preponderance of the

evidence that Kounelis requested a copy of the surveillance footage within the seven to ten day

window or that, given the seriousness of the disciplinary allegation, Sergeants Forde and Perez

should have taken it on themselves to have preserved the surveillance footage, then there is some,

but certainly not conclusive, evidence that Sergeants Forde or Perez may have participated in the

deprivation of Kounelis's due process rights.  If, however, a jury finds that no request for the surveillance footage was made within the seven to ten day window and that Sergeants Forde and Perez acted reasonably in choosing not to review the surveillance footage, then, unless there is some other evidence against them, the two sergeants may not be found personally liable for the deprivation of Kounelis's due process rights.

Contrary to Kounelis's suggestion, the Court has not already concluded that Sergeants Forde and Perez were responsible for the violation of Kounelis's due process rights by the non-production of evidence for use at his disciplinary proceeding.  In its September 5, 2005 opinion denying Sergeants James's and Perez's application for qualified immunity, the Court was under the impression, based on Defendants' representations, that a video existed but Defendants were withholding the surveillance footage for confidentiality reasons.  On the basis of that belief, the Court stated that the non-production of the surveillance footage at the disciplinary hearing was a violation of Kounelis's due process right to present evidence and marshal the facts in his defense. Kounelis, 2005 U.S. Dist. LEXIS 20070, at *30.  Thus, having found that the alleged facts established the violation of a constitutional right and that the constitutional right was clearly established, the Court denied qualified immunity to Sergeants James and Perez.

Nothing in the Court's previous discussion of qualified immunity can be taken to necessitate the entry of summary judgment against Sergeants Forde and Perez.  Not only has the posture of the litigation changed, but so has the factual landscape.  At the time of the September 5, 2005 opinion, the Court was considering whether Defendants were entitled to the defense of qualified immunity.  Now the Court is considering whether liability should be imposed. Additionally, at the time of the September 5, 2005 opinion, the Court was under the

29

misperception that a copy of the surveillance footage existed. Now the Court knows that the footage was not preserved. Thus, as previously explained, a factual question has arisen as to the responsibility for the non-preservation. Given both the posture of the litigation and the development of a factual question, summary judgment against Sergeants Forde and Perez for violation of Kounelis's due process rights is not appropriate.

**C. Defendants' Motion for Summary Judgment**

Defendants, collectively, are seeking summary judgment on a number of grounds. First, Defendants assert that they are entitled to qualified immunity on Kounelis's § 1983 claim for violations of his Eighth Amendment rights. Second, Defendants argue that Kounelis has not established a prima facie case of excessive force. Third, Defendants argue that Kounelis has not been retaliated against for engaging in constitutionally protected conduct. Fourth, Defendants argue that Kounelis has not suffered severe distress for the purposes of his intentional infliction of emotional distress claim. Fifth, Defendants argue that provisions of New Jersey law protect them from liability for pain and suffering. Sixth and finally, Defendants argue that Kounelis is not entitled to punitive damages. Because questions of material fact exist on five out of six of Kounelis's claims, summary judgment will be granted as to Kounelis's intentional infliction of emotional distress claim and denied in all other respects.

*(1) Qualified Immunity*

SCOs Atuncar, Schwenk, and Bush[10] argue that they are entitled to qualified immunity on Kounelis's § 1983 claim for use of excessive force in violation of his Eighth Amendment rights

---

[10] Since the Complaint alleges that SCOs Atuncar, Schwenk, and Bush violated his Eighth Amendment rights, the Court presumes that they are the Defendants who are seeking qualified immunity.

on two grounds.  First, because they acted reasonably under the circumstances, and second, because they did not violate Kounelis's Eighth Amendment rights.

Qualified immunity is a defense available to government officials that, in certain cases, shields them from litigation arising from actions taken in the course of their duties.  Doe v. Groody, 361 F.3d 232, 237 (3d Cir. 2004).  In order for a defendant to be immune from liability, the Court must find that the defendant's conduct has not violated any clearly established statutory or constitutional right.  Wilson v. Layne, 526 U.S. 603, 614 (1999).  If, however, the Court finds that a reasonable official would have known that the alleged conduct was in violation of a clearly established federal right, then immunity is forfeited.

In assessing a defendant's qualified immunity, the Court conducts a two-step inquiry. Doe v. Groody, 361 F.3d at 237.  First, the Court determines whether a plaintiff has alleged a violation of a clearly established constitutional right.  Leveto v. Lapina, 258 F.3d 156, 162 (3d Cir. 2001).  If so, then the Court determines whether the right was clearly established at the time of the alleged violation.  Id.   A right is "clearly established" when its contours are sufficiently defined, such that "a reasonable official would understand that what he is doing violates that right."  Shea v. Smith, 966 F.2d 127, 130 (3d. Cir. 1992).

Taking Kounelis's allegations as true, the Court found in its September 5, 2005 opinion that "the prison officials who participated in the alleged assault violated Kounelis's Eighth Amendment right not to be subject to excessive force."  Kounelis, 2005 U.S. Dist. LEXIS, at *34.  As stated in the September 5, 2005 opinion, the Eighth Amendment is violated when force is applied, not "in a good faith effort to maintain or restore discipline," but rather when force is applied "maliciously or sadistically for the very purpose of causing harm."  Id. (quoting Hudson

v. McMillian, 503 U.S. 1, 6 (1992).  Finding, on the basis of the Complaint's allegations, that it was reasonable to infer that SCOs Atuncar, Schwenk, and Bush "assaulted Kounelis, not to maintain or restore discipline, but maliciously and sadistically to cause harm," the Court concluded that Kounelis had alleged a violation of a clearly established constitutional right.  Id.

An inmate's Eighth Amendment right to be free from the use of excessive force was clearly established at the time of the altercation.  Kounelis, 2005 U.S. Dist. LEXIS, at *34.  The Court concluded that on November 14, 2003, "a reasonable prison official would have understood . . . that beating a prison inmate without justification violated the Eighth Amendment."  Id. at *35.  Therefore, the Court denied SCO Schwenk's and SCO Bush's application for qualified immunity on Kounelis's excessive force claim.

Given that nothing has changed since the September 5, 2005 opinion was issued, the Court concludes now, as it did before, that SCOs Atuncar, Schwenk, and Bush are not entitled to a summary judgment of qualified immunity on Kounelis's § 1983 claim for violation of his Eighth Amendment rights.  The earlier decision resolved a motion to dismiss, but there is evidence on the basis of which a reasonable jury could find that these three Defendants used excessive force.  Therefore, summary judgment on qualified immunity grounds cannot be granted.

Even though the September 5, 2005 opinion only denied qualified immunity as to SCOs Schwenk and Bush, the Court's conclusion that on November 14, 2003 a reasonable prison official would have understood that beating a prison inmate without justification violated the Eighth Amendment applies to all Defendants against whom Kounelis's Complaint alleges Eighth Amendment violations for use of excessive force.  As such, no Defendant is entitled to qualified

immunity on Kounelis's § 1983 claim for violation of his Eighth Amendment rights.[11]

### (2) Excessive Use of Force

SCOs Atuncar, Schwenk, and Bush argue that summary judgment should be granted on Kounelis's § 1983 excessive use of force claim for violation of his Eighth Amendment right on three different theories.[12]   First, they argue that Kounelis is estopped from presenting evidence that undermines the validity of a disciplinary proceeding.  Second, SCOs Atuncar, Schwenk, and Bush argue that any force used against Kounelis was reasonable under the circumstances.  Third, they argue that Kounelis's de minimus injuries are not cognizable under the Eighth Amendment. None of these arguments have merit, however, because they are all predicated on highly disputed issues of fact.  Therefore, Defendants' motion for summary judgment on Kounelis's § 1983 claim for violation of his Eighth Amendment rights will be denied.

To survive a motion for summary judgment on an excessive force claim, Kounelis must set forth specific facts showing that force was applied "maliciously and sadistically to cause

---

[11] Defendants' reply brief submitted in support of their motion for summary judgment appears to suggest that all Defendants are seeking qualified immunity on all § 1983 claims asserted against them.  However, Defendants' initial brief only argues for qualified immunity on Kounelis's excessive force claim.  Since the Court has discretion over whether to consider new arguments raised in a reply brief, see Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994), and since Defendants' arguments for qualified immunity, even if considered, would likely prove fruitless, as all of the rights allegedly violated by Defendants were clearly established at the time of the alleged violation, the Court has limited its qualified immunity analysis to Kounelis's excessive force claim.

[12] As noted in the September 5, 2005 opinion, Kounelis's § 1983 claim for violations of his Eighth Amendment rights against Sergeant James rests on a correction officer's duty to intervene.  See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (holding that "a corrections officer's failure to intervene in a beating can be a basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to do so"). Sergeant James, however, has not moved for summary judgment on this claim.

harm," as opposed to, "in a good faith effort to maintain or restore discipline."  Hudson, 503 U.S. at 7.  This showing breaks down into two components, one subjective and the other objective.  First, the subjective component requires Kounelis to show that "officials acted with a sufficiently culpable state of mind," Hudson, 503 U.S. at 8, or in other words, that Defendants' actions were wanton or obdurate given the circumstances surrounding their conduct, see Wilson v. Seiter, 501 U.S. 294, 299-300 (1991).

Second, the objective component requires Kounelis to show that the alleged wrongdoing was "harmful enough to establish a constitutional violation."  Hudson, 503 U.S. at 8.  The injury inflicted does not need to be significant, because the "focus is on the force used, as opposed to the injury inflicted," Brooks v. Kyler, 204 F.3d 102, 104 (3d Cir. 2000), but it must be more than de minimus, Hudson, 503 U.S. at 10.  Indeed, the Court of Appeals has held that "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim of wanton and excessive force."  Brooks, 204 F.3d at 104.

In determining whether Kounelis has established a prima facie case for the use of excessive force, a court considers five factors: (1) "the need for the application of the force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."  Brooks, 204 F.3d at 106 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  Summary judgment in favor of defendants is only appropriate "if it appears that the evidence, viewed in the light most favorable to the plaintiff,

[would not] support a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106.

In this case, if Kounelis's version of the events is accepted as true, there can be no question that Kounelis has established a prima facie case for the excessive use of force. According to Kounelis, there was no need for the SCOs' use of force since Kounelis was merely passing through the E/D area at the time he claims to have been assaulted by SCO Atuncar.  In addition, Kounelis has testified that he suffered numerous personal injuries, including a black eye, bruising, scratches, a laceration on his right finger, a swollen left check-bone, a low back sprain, and abrasions to both knees.  Therefore, Kounelis has presented evidence, which if believed, would show that SCOs Atuncar, Schwenk, and Bush applied force maliciously and sadistically with the intent to cause harm.

Despite the clear sufficiency of Kounelis's excessive force claim, Defendants argue that Kounelis cannot establish the subjective component of his claim because the Court may not consider any facts or evidence that "contradict the disciplinary proceedings arising from this same incident, unless the finding of guilt has been reversed or otherwise impaired." Concepcion v. Morton, 125 F. Supp. 2d 111, 123 (D.N.J. 2000).  Since Kounelis was found guilty of unauthorized touching following his disciplinary proceeding, and that finding has not been reversed on appeal, Defendants submit that Kounelis is estopped from proceeding with his excessive force claim, because a finding of excessive force would contradict the outcome of the disciplinary proceeding.

Although Defendants accurately observe that the disciplinary hearing officer's finding of guilt has not been reversed, Defendants' argument ignores the fact that the disciplinary hearing

35

itself is subject to attack and was impaired by the spoliation of evidence—evidence that may have supported Kounelis's version of events and resulted in a finding of not guilty. Indeed, the case relied on by Defendants conditions the preclusive effect of a disciplinary hearing's findings on the validity of that process. Concepcion, 125 F. Supp. 2d at 123 (instructing that courts not consider evidence that contradicts the findings of a disciplinary proceeding "unless the finding of guilt has been reversed or otherwise impaired"). Thus, there is sufficient evidence that Kounelis's disciplinary hearing was impaired and, if so, Kounelis is not precluded from presenting evidence in support of his § 1983 claim for violation of his Eighth Amendment rights.

SCOs Atuncar, Schwenk, and Bush also argue that they are entitled to summary judgment on the ground that any use of force was reasonable under the circumstances. They submit that in emergency situations, courts should give deference to prison officials' assessment of the appropriate level of force. Reasonable officers, Defendants continue, who are confronted with an aggressive inmate, could have believed that, in order to protect themselves and maintain security, restraining the inmate was an appropriate and lawful use of force. Thus, on the basis of the alleged reasonableness of their use of force, Defendants contend that they are entitled to summary judgment.

All that this argument does, however, is demonstrate that there is a question of fact as to whether the SCOs' use force was in good faith and in order to maintain discipline, as Defendants contend, or whether force was applied maliciously or sadistically to cause harm, as Kounelis contends. Indeed, Kounelis submits that at least one of the Defendants testified that merely bumping a corrections officer would not require any use of force. Therefore, since Defendants' version of the altercation is controverted by evidence adduced by Kounelis, and if Kounelis's

36

version of events is to be believed, Defendants' argument that they are entitled to summary

judgment on the grounds that their use of force was reasonable under the circumstances must fail.

Finally, Defendants argue that they are entitled to summary judgment because Kounelis

only suffered de minimus injuries.  Relying on Hudson's statement that not "every malevolent

touch by a prison guard gives rise to a federal cause of action," 503 U.S. at 9, Defendants assert

that Kounelis's injuries—minor lacerations on his finger and a slightly swollen check bone—are

too minor and therefore do not rise to the level of a constitutional violation.

Kounelis's evidence tends to show, however, that his injuries rise above the de minimus

level.  Kounelis testified that he was grabbed by the neck, choked, and thrown to the ground,

where he was repeatedly punched and kicked.  As a result, Kounelis testified, and has submitted

documentary evidence showing, that he suffered a black eye, bruising, scratches, a laceration on

his right finger, a swollen left check-bone, a low back sprain, and abrasions to both knees.  If

Kounelis's allegations are to be believed, then there is no question that his injuries are harmful

enough to establish a constitutional violation.  Cf. Hudson, 503 U.S. at 10 (finding that "blows

directed at [the inmate], which caused bruises, swelling, loosened teeth, and a cracked dental

plate" were "not de minimus for Eighth Amendment purposes"); Smith v. Mensinger, 293 F.3d

641, 649 (3d Cir. 2002) (finding that, absent "extraordinary circumstances" justifying the use of

force, "[p]unching and kicking [an inmate] who is handcuffed . . . and under the control of at

least six prison guards as he is being thrown into cabinets and walls is repugnant to the

conscience of mankind"); Brooks, 204 F.3d at 107 (finding that allegations of assault by three

correctional officers who "repeatedly punch[ed] [the inmate] in the head, stomp[ed] on his back

and neck, slamm[ed] his head into a wall, chok[ed] him, threaten[ed] him, and nearly render[ed]

him unconscious" rose far above the de minimus level).

### (3) Retaliation Claims

In this case, Kounelis has two separate but related retaliation claims: one against SCOs Atuncar, Schwenk, and Bush and another against Lieutenant Cannon and Captain Sagebiel. Defendants assert that both retaliation claims fail because Kounelis has suffered no adverse action and because Kounelis has not established causation.  Because Kounelis has established sufficient facts to permit an inference that actions taken by prison officials were retaliatory and not reasonably related to any legitimate penological interest, Defendants' motion for summary judgment on the retaliation claims will be denied.

In order to withstand a motion for summary judgment on a retaliation claim, an inmate must make a three-part showing.  First, as a threshold matter, an inmate must establish that the conduct, which led to the alleged retaliation, was constitutionally protected.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Then, the inmate must establish that he suffered an "adverse action" at the hands of the prison officials.  Id.  An inmate satisfies the adverse action requirement by demonstrating that the action taken against him would "deter a person of ordinary firmness from exercising his constitutional rights."  Id.  Finally, the inmate must establish "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Id.  A causal link is established when an inmate shows that "his constitutionally-protected conduct was a substantial or motivating factor" in the prison officials' decision to take action against him.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).

Once a prisoner has discharged his burden by demonstrating that his exercise of a constitutionally protected right was a substantial or motivating factor in the challenged action,

the burden shifts to the prison officials to prove by a preponderance of the evidence that they

would have taken the same action anyway.  <u>Rauser</u>, 241 F.3d at 333.  Thus, the prison officials

"may still prevail by proving that they would have [taken the same action] absent the protected

conduct for reasons reasonably related to a legitimate penological interest."  <u>Id.</u> at 334.

<i>(i) Retaliation by SCOs Atuncar, Schwenk, and Bush</i>

Kounelis has set forth sufficient facts to survive a motion for summary judgment on his

retaliation claim against SCOs Atuncar, Schwenk, and Bush.  Kounelis has alleged that in

response to filing administrative complaints against SCO Atuncar on September 4, 2003 and

September 11, 2003, he was subjected to threats and assaulted by SCOs Atuncar, Schwenk, and

Bush, who then conspired to file false disciplinary charges against him to cover up the assault.

Defendants do not contest that filing administrative complaints is constitutionally

protected conduct.  However, Defendants do dispute that Kounelis suffered adverse action.

Defendants submit that there was no adverse action because Kounelis appealed the outcome of

his disciplinary proceeding and brought legal action against the corrections officers.  Thus,

Defendants' seem to conclude that because Kounelis was not deterred by the allegedly retaliatory

conduct, then a person of ordinary firmness would not be deterred from engaging in similar acts.

The law of this Circuit does not support Defendants' position.  Moreover, the Court of

Appeals has clearly stated that an action is adverse when a person of ordinary firmness would be

deterred from exercising his constitutional rights.  The Court of Appeals has never required that

the plaintiff himself be deterred by the allegedly retaliatory action and it is an illogical

requirement.  At most, the fact that Kounelis appealed his disciplinary charge and brought legal

action against the corrections officers is only some evidence that a person of ordinary firmness

39

would not be deterred, but it clearly does not entitle SCOs Atuncar, Schwenk, and Bush to summary judgment on Kounelis's retaliation claim.[13]

Defendants also argue that Kounelis has failed to establish the requisite causal connection between his constitutionally protected activity and the alleged retaliation. Defendants submit that Kounelis has produced no evidence to support the conclusion that his filing of the administrative complaints was a substantial or motivating factor in Defendants' alleged retaliation.

This argument is unavailing. Kounelis has produced evidence of a causal connection through statements made by SCO Atuncar. Kounelis has alleged that after he filed the first administrative complaint, SCO Atuncar threatened to set him up if Kounelis filed any more complaints against him. Kounelis also produced evidence that during the assault on November 14, 2003, SCO Atuncar yelled: "I told you about writing me up!" Presuming that these allegations are true, SCO Atuncar's statement are evidence that Kounelis's complaints were a substantial or motivating factor in the assault and subsequent disciplinary charges.

*(ii) Retaliation by Lieutenant Cannon and Captain Sagebiel*

Kounelis has also produced sufficient evidence to survive a motion for summary judgment on his retaliation claim against Lieutenant Cannon and Captain Sagebiel. Kounelis has alleged that following significant events in his civil action against members of NSP staff, he was subjected to cell searches, drug tests, and false disciplinary charges.

Again, there is no dispute that Kounelis was engaging in constitutionally protected

---

[13] Indeed, "whether a prisoner-plaintiff has met [the adverse action] prong of his . . . retaliation claim will depend on the facts of the particular case." Allah, 229 F.3d at 225. Given the case law in this Circuit, if Kounelis's evidence is believed, then the assault and subsequent disciplinary charges undeniably constitute adverse action, even if Kounelis himself was not deterred from taking further action.

conduct when he filed and pursued this civil action.  See Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000) (noting that it is well settled that "prisoners have a constitutional right to access to the courts").  And again, Defendants argue that Kounelis has suffered no adverse action at the hands of Lieutenant Cannon and Captain Sagebiel because he continued to pursue his civil action.  This argument will be rejected here for the same reasons as stated above.

Defendants also argue that Kounelis has not established that the prosecution of his civil action was a substantial or motivating factor in the allegedly retaliatory actions.  The Court, however, finds that the temporal proximity between advances in the litigation and the searches of Kounelis's cell suggests a causal connection sufficient to withstand summary judgment.  See Rauser, 241 F.3d at 334 (stating that "suggestive temporal proximity" is a relevant factor in a causation analysis).  Further, two of the charges arising out of the searches proved to be without merit, and Kounelis challenges the legitimacy of the conviction on the third charge.

Finally, Defendants assert that the searches of Kounelis's cell and subsequent drug tests and disciplinary charges were merely routine and not retaliatory.  Therefore, Lieutenant Cannon and Captain Sagebiel submit that they are entitled to summary judgment because they would have taken the same action, even if Kounelis had not filed claims against members of NSP staff, because their actions were motivated by the legitimate penological interest of maintaining order within the prison.

Searches of inmates' cells are a legitimate part of prison management.  But whether Defendants would have repeatedly searched Kounelis's cell or subjected him to false disciplinary charges, even if he had not filed an action against the prison, is clearly a question of fact that must be resolved by a jury.  Indeed, Kounelis's evidence would allow a jury to conclude that

Lieutenant Cannon's and Captain Sagebiel's motivations were improper.  Therefore, their motion

for summary judgment on Kounelis's retaliation claim is denied.

### (4) Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress ("IIED"), Kounelis

must plead and prove four elements: (1) defendants acted intentionally or recklessly, both in

doing the act and producing the emotional distress; (2) defendants' conduct was outrageous and

extreme, so as to go beyond all bounds of decency and be utterly intolerable in a civilized

community; (3) defendants' actions were the proximate cause of the plaintiff's emotional

distress; and (4) the distress suffered was so severe that no reasonable person could be expected

to endure it.  Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988).

Defendants submit that Kounelis's IIED claim must fail because his distress cannot be

characterized as severe.  Defendants assert that, despite Kounelis's allegations of emotional

distress, he has never been treated for his alleged anxiety, nor has he presented any objective

medical evidence suggesting that his emotional distress was the proximate result of Defendants'

conduct.

Contrary to Defendants' assertions, neither medical treatment, nor expert testimony is

necessary in order for a plaintiff to prevail on an IIED claim.  Bolden v. SEPTA, 21 F.3d 29, 34

(3d Cir. 1994) (holding that expert testimony is not required to corroborate a claim for emotional

distress).  Indeed, in New Jersey, there is generally no "rule or policy requiring expert

testimony."  Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982) (stating that expert testimony

is only required when "the matter to be dealt with is so esoteric that jurors of common judgment

and experience cannot form a valid judgment as to whether the conduct of the party was

42

reasonable").

Notwithstanding that expert evidence is not required, as of the time of the filing of the appeal from the Magistrate Judge's order and the motions for summary judgment, the evidence produced was not sufficient to support a finding of conduct so outrageous and extreme and so beyond all bounds of decency as to be utterly intolerable in a civilized community as to establish a claim of IIED as defined under New Jersey law.  The alleged conduct, though wrongful, can be addressed through other federal and state court causes of action.  Therefore, Defendants' motion for summary judgment on Kounelis's IIED claim will be granted.  It will be granted, however, without prejudice to Kounelis's right to move to renew the claim if events that recently occurred justify its reinstatement.

In December, 2007, this action had been set down for trial on January 9, 2008.  On December 19, 2007, Kounelis's counsel brought to the Court's attention that they had received information that on December 18, 2007, one or more guards at NSP further retaliated against Kounelis by destroying his legal materials, beating him and filing false charges against him, and that as a part of the retaliatory measures, Kounelis had been transferred to the New Jersey State Prison in Trenton, where he was held naked in a cell and under lights for 24 hours a day.

In light of these allegations, the Court issued an order requiring that on January 4, 2008 Defendants show cause why an order should not be entered enjoining and restraining Defendants from committing any retaliatory violence against Kounelis or taking any other form of retaliatory action against him on account of his having asserted any complaint against any prison official or having filed and pursued the Complaint in this action.  Defendants were directed to produce at the hearing Kounelis, the Corrections Officer accused of having attacked him, two inmates who

were reported to have observed some or all of the allegedly retaliatory acts, and the officials at

NSP and Trenton State Prison responsible for Kounelis's transfer and manner of custody in the

Trenton State Prison.

The trial of the case was adjourned to give Kounelis an opportunity to move to file an

Amended Complaint and to take additional discovery if the facts warranted it.  The Court itself

was concerned because, if these allegations prove to be true, not only has a wrong been

committed against Kounelis, but also there has been an obstruction of the judicial process of the

Court.

### (5) Liability for Pain and Suffering under State Law

Defendants assert that under the provisions of the New Jersey Tort Claims Act, Kounelis

cannot recover damages for pain and suffering because Kounelis has not suffered a permanent

injury.  See N.J. Stat. Ann. § 59:9-2(d).[14]  In response, Kounelis asserts that § 59:9-2(d) is made

inapplicable by § 59:3-14 because Defendants engaged in intentional misconduct and acts of

malice.

Section 59:3-14 provides an exception to public employee immunity.  The section states

that when a public employee's conduct is "outside the scope of his employment or constitute[s] a

crime, actual fraud, actual malice or willful misconduct," then nothing in the New Jersey Tort

---

[14] Section 59:9-2 states:
> No damages shall be awarded against a public entity or public
> employee for pain and suffering resulting from any injury;
> provided, however, that this limitation on the recovery of damages
> for pain and suffering shall not apply in cases of permanent loss of
> a bodily function, permanent disfigurement or dismemberment
> where the medical treatment expenses are in excess of $ 3,600.00.

N.J. Stat. Ann. § 59:9-2(d).

Claims Act shall "exonerate [that] public employee from liability" or "from the full measure of recovery applicable to a person in the private sector."  N.J. Stat. Ann. § 59:3-14.

If Kounelis's allegations are found to be true, then Defendants clearly acted willfully and with actual malice and would not be entitled to immunity.  As such, § 59:9-2(d)'s requirement of a permanent injury would be of no consequence.  See Kelly v. County of Monmouth, 380 N.J. Super 552, 562 (App. Div. 2005) (concluding that "in circumstances in which [a] public employee acts willfully or beyond the scope of his employment, [§ 59:9-2(d)'s] verbal threshold must not be applied").  Therefore, since a jury could conclude that Defendants acted willfully or with actual malice, § 59:9-2(d) does not bar Kounelis from recovering damages for pain and suffering and Defendants' motion for summary judgment in reliance on § 59:9-2(d) must be denied.

### (6) Punitive Damages

Finally, Defendants argue that Kounelis is not entitled to punitive damages because Defendants' conduct was not the product of an evil intent or motive.  Defendants' assertion, however, is based on their version of highly disputed facts.

Punitive damages are not awarded as compensation for injury; they are awarded for the dual purpose of punishing the wrongdoer and deterring future violations.  In a § 1983 action, a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Thus, for a § 1983 plaintiff to qualify for a punitive damages award, a "defendant's conduct must be, at a minimum, reckless or callous"—it is not essential that the defendant's action meet the higher standard of an intentional

or evil motive.  Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).

In this case, Kounelis's allegations, if established at trial, would show that the conduct of at least some of the Defendants was recklessly or callously indifferent to his federally protected rights, if not the product of an evil intent or motive.  Consequently, Defendants' motion for summary judgment on the issue of punitive damages will be denied.

## IV.  CONCLUSION

For the reasons set forth above, the order of the Magistrate Judge, based on the finding that Defendants were responsible for spoliation of evidence of the November 14, 2003 altercation, will be affirmed to the extent that (1) it did not preclude Defendants from introducing evidence of the November 14, 2003 altercation at trial and (2) it ordered Defendants to pay all of Kounelis's costs associated with discovery concerning the surveillance footage and the evidentiary hearing.  The order of the Magistrate Judge will be reversed to the extent that: (1) it denied Kounelis's application that the jury be given an adverse inference charge; (2) it denied Kounelis's motion for attorneys' fees; and (3) it required Defendants to pay $3,000 to the District of New Jersey's pro bono fund.  An order will be entered to the effect that at trial, the jury will be given an adverse inference charge with respect to Defendants' spoliation of the surveillance footage and that Defendants shall pay Kounelis's attorneys' fees and costs incurred in connection with the discovery and evidentiary hearing concerning the surveillance footage of the November 14, 2003 altercation.

Kounelis's motion for summary judgment against Sergeants Forde and Perez will be denied.  Defendants' motion for summary judgment on Kounelis's IIED claim will be granted without prejudice to Kounelis's right to move to reinstate that claim if facts which develop in

connection with Defendants' actions in December, 2007, provide grounds for reinstatement.  In all other respects, Defendants' motion to dismiss or, in the alternative, for summary judgment is denied.

      The Court will enter an order implementing this opinion.


                         /s/ Dickinson R. Debevoise
                         DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: January 3, 2008